STATE OF CONNECTICUT *v.* WILLIE BOWMAN
(AC 15960)

O'Connell, Schaller and Hennessy, Js.

Argued April 25—officially released August 5, 1997

*Norman A. Pattis*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Clark*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Willie Bowman, appeals from a judgment of conviction, after a jury trial, of attempted sexual assault in the third degree in violation of General Statutes §§ 53a-72 (a) and 53a-49, assault in the third degree in violation of General Statutes § 53a-61 and being a persistent dangerous felony offender pursuant to General Statutes § 53a-40 (a) (1). The defendant claims that the trial court improperly (1) denied his motion for a mistrial after the victim offered evidence that she had suffered a miscarriage, (2) allowed constancy of accusation evidence to be admitted with respect to the counts not involving sexual misconduct, and (3) permitted hearsay testimony to be admitted under the excited utterance exception to the hearsay rule. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On the evening of November 6, 1994, the victim, who was five months pregnant, stopped at the home of her friend, Roseann Bowman. There, she met the

defendant, who is Roseann's father, for the first time. The three consumed one or two alcoholic beverages each.

At approximately 11 p.m., the defendant agreed to drive the victim home, but when his car neared her home, he refused to let her out of the car. He then drove to his apartment located in the Westville section of New Haven. Both the defendant and the victim entered his apartment where the victim called her husband. During that call, the victim told her husband that she was at "Willie's" apartment because he refused to take her home. Thereafter, the victim and the defendant began listening to music and drinking alcoholic beverages. After a second telephone conversation with her husband, the victim again asked the defendant to take her home. The defendant responded, "Well, you [are] not going home until you give me some," to which the victim replied, "No, you [are] not getting any."[1] The defendant jumped across the coffee table and onto the victim. The defendant grabbed and pulled on the victim's clothes as the victim screamed and successfully fought off the defendant. During the struggle, the defendant put his hands around the victim's neck, choked her, and hit her face.

The victim then called her husband a third time and instructed him to call the police. During that telephone call, the defendant took the receiver from the victim and informed her husband that she was free to leave and that he would call a cab for her. At this time, the husband testified that he thought his wife was "playing a joke" and simply hung up after speaking to the defendant.

The next day, the defendant agreed to take the victim back to his daughter's home. While they were in the

---

[1] The record reveals that the victim interpreted that statement by the defendant to mean that he wanted to engage in sexual activity with her.

car, the defendant threatened the victim that if she told anyone what had happened he would kill her and her children. As the defendant's car approached Bowman's residence, the victim jumped out of the car and ran to the office of the Alling Memorial Golf Course. There, the first person she encountered was Patricia Bradley, the course supervisor. The victim requested that she call the police. Bradley complied. While the two waited for the police to arrive, the victim told Bradley what had happened. Shortly thereafter, Officer Reginold Sutton arrived and gathered preliminary information from the victim. Approximately one week after the assault, the victim suffered a miscarriage, which was unrelated to the assault.

On November 20, 1994, the victim went to the New Haven police department and met with Sergeant Joann Peterson. Peterson testified that at the time she interviewed the victim she seemed "disengaged [and that] her mind appeared to be elsewhere." Peterson was aware of the miscarriage and testified that she did not press the victim on certain points due to her fragile emotional state.

The jury trial commenced on February 6, 1996. On February 14, 1996, the jury returned verdicts of guilty to the charges of attempted sexual assault in the third degree in violation of §§ 53a-72 (a) and 53a-49 and assault in the third degree in violation of § 53a-61. Immediately thereafter, the jury found the defendant guilty of being a persistent dangerous felony offender pursuant to § 53a-40 (a) (1). This appeal followed.

I

The defendant first claims that the trial court abused its discretion when it denied his motion for a mistrial after evidence regarding the victim's miscarriage was introduced. We disagree.

The following additional facts are relevant to this claim. During trial, in anticipation of the victim's testimony, the defendant moved to preclude testimony regarding the miscarriage, arguing that it was too prejudicial. In response, the state argued that the victim's statements to Peterson were inconsistent with her prior statements to Sutton but could be explained by the miscarriage. The trial court denied the motion but cautioned that this testimony should come into evidence only if the court found it relevant to explain the victim's state of mind upon completion of the defendant's cross-examination.

In accordance with the trial court's ruling, the victim was instructed by the state that she could not mention her miscarriage during her testimony on direct examination. Despite this, the victim testified on direct that she had suffered a miscarriage.[2] In the jury's absence, the defendant moved for a mistrial on the ground that the victim had violated the court's previous ruling. At this time, the defendant stated that he had hoped to avoid the miscarriage evidence during his cross-examination of the victim; however, he was unable to represent to the court that he would have been successful in this endeavor.[3] The court denied the defense motion and stated that its prior evidentiary ruling had been made with the understanding that "this information was going to come in any event sooner or later."

The trial court also indicated that after the defendant completed his cross-examination of the victim, it would entertain another motion for mistrial if the defendant

---

[2] On direct examination, the state asked, "You said you had been through something else?" The victim responded, "Yes, I had just lost my baby."

[3] The defense also pointed out another matter of concern to him which was "[w]hat I had hoped to avoid was the impression of being the insensitive man attacking a woman who lost a baby, and I think that was a serious tactical consideration. I have no idea whether I could have pulled it off or not, but now it's out there and I feel compelled to address it . . . ."

so moved. Thereafter, the jury was brought in and given the following instruction: "The court made a ruling that there was to be no mention of any loss of child, miscarriage . . . and the reason why is quite simple, there is absolutely no evidence that this is in any way connected with the defendant; indeed, I am telling you it's not and, in fact, counsel have stipulated that there is no connection between the defendant and this event. . . . In fact, the state has violated my order and the fault lies, quite clearly, with the state of Connecticut here." At the close of defense counsel's cross-examination of the victim, he asked if she blamed the defendant for her miscarriage to which she replied, "Yes." Further, during closing argument, the defendant argued to the jury that the sole reason that the victim followed through with her complaint against the defendant was because she blamed him for her miscarriage.

The defendant argues on appeal that the trial court improperly denied his motion for a mistrial after the victim violated the court ruling because the limiting instruction was insufficient to cure the prejudice caused by the victim's testimony. We are unpersuaded.

"While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . *State* v. *Wooten*, [227 Conn. 677, 693–94, 631 A.2d 271 (1993)]. On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. *State* v. *Rodriguez*, 210 Conn. 315, 333, 554 A.2d 1080 (1989); *State* v. *Bausman*, 162 Conn. 308, 312, 294 A.2d

312 (1972). . . . *State* v. *Day*, 233 Conn. 813, 836–37, 661 A.2d 539 (1995). The trial court is in a better position than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. Id., 837. The decision whether to grant a mistrial is within the sound discretion of the trial court. Id., 835; see Practice Book § 887." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 350–51, 696 A.2d 944 (1997).

The record reveals that the trial court denied the defendant's motion after it concluded that his constitutional right to a fair trial had not been denied. The evaluation of a trial court's denial of a mistrial must be viewed in the context of the entire trial. See *State* v. *Traficonda*, 223 Conn. 273, 282–83, 612 A.2d 45 (1992). The trial court instructed the jury that (1) the miscarriage was in no way attributable to the defendant, (2) the state had violated the court's order, and (3) the jury should have no sympathy for the victim as sympathy has no place in the courtroom. The jury is presumed to follow the instructions of the trial court. See *State* v. *Rodriguez*, supra, 210 Conn. 333; *State* v. *Nelson*, 17 Conn. App. 556, 568, 555 A.2d 426 (1989). Moreover, defense counsel stated for the record that "[i]t was my understanding that the court was willing to let this in to explain inconsistencies, to explain statements to Officer Peterson and her earlier statements and it went to her state of mind. I objected on the grounds that its prejudicial impact was far more than its probative value, however, having come in for that purpose and against the court's order, it strikes me that I'm required, or entitled, rather, to throw it in."

The defendant has failed to establish that, when taken in context of the entire trial, he was prejudiced by the

violation of the court order.[4] We, therefore, conclude that the trial court did not abuse its discretion in denying the defendant's motion for mistrial.[5]

## II

The defendant next claims that the trial court improperly admitted the victim's statement to Peterson.[6] The court ruled that it was not possible to separate information related to the sexual assault charges from that related to the assault and still give the statement contextual meaning. The defendant claims that the trial court's "refusal" to redact portions of the statement under these circumstances mandated a wholesale exclusion of the statement. We reject this claim.

The record reveals that the parties engaged in a discussion with the court prior to Peterson's testimony, in anticipation of the state's introduction into evidence of the victim's statement to Peterson under the constancy of accusation doctrine. The trial court rejected the defendant's invitation to identify and redact those statements related exclusively to the assault charge but did agree to redact portions of the statement pertaining to the victim's miscarriage.[7]

[4] During closing arguments the defense utilized the miscarriage evidence to its advantage when it argued that the victim had a motive to fabricate in that she blamed the defendant for her miscarriage.

[5] We note that although the court informed the defendant that it would entertain another motion for a mistrial after the cross-examination of the victim the defense never so moved.

[6] This statement was admitted at trial as exhibit H. The redacted statement that was considered by the jury included the following description of the incident: "I don't know exactly where I was at, but I knew I was at [Bowman's] house. . . . We sat there and had a few drinks and I asked him would he take me home now but he wouldn't . . . . [Bowman] said I was gonna give him some before I left. I guess he meant I was giving him some pussy and I said well no I'm not. So he said yes you are, and I sat there and the next thing I know he like leaped over the table and he grabbed me by my throat and proceeded to choke me, and he kept choking me and choking me . . . . So the next thing I know he punched me in my eye."

[7] We note that the defendant failed to articulate which statements he found to be related exclusively to the assault charge, either during trial or now on appeal.

When the statement was admitted into evidence, the court instructed the jury that the statement is one of "constancy of accusation" and that this doctrine would be explained in greater detail during the final charge. The defendant did not object to the trial court's explanation. As promised, the trial court's final charge to the jury included the following instruction: "Any evidence of constancy of accusation applies only to attempted sexual assault in the first degree and to the lesser included offense of attempted sexual assault in the third degree." The defendant did not take an exception when this limiting instruction was given to the jury.

The trial court has broad discretion in ruling on the admissibility of evidence. See State v. Miller, 202 Conn. 463, 482, 522 A.2d 249 (1987). " 'Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . The aggrieved party, therefore, assumes a heavy burden when seeking to reverse the exercise of judicial discretion.' " State v. Hernandez, 28 Conn. App. 126, 137, 612 A.2d 88, cert. denied, 223 Conn. 920, 614 A.2d 828 (1992).

We find that the trial court properly considered the request of the defendant and found that the statements related to the sexual assault were inextricably intertwined with the statements related to the assault. The trial court, aware of this, gave an adequate limiting instruction to the jury to prevent any prejudice that the defendant might suffer. Thus, we conclude that the statement was properly admitted.

### III

The defendant's final claim is that the trial court improperly admitted statements made by the victim to Bradley and Sutton under the excited utterance exception to the hearsay rule. The defendant argues that due to the circumstances under which they were made,

these "declarations" did not carry with them the requisite reliability that is the hallmark of an exception to the hearsay rule. We agree with the defendant, but find the error to be harmless under the circumstances.

A statement is inadmissible hearsay if it is made "extra judicially by one not under oath and . . . offered in proof of [the facts] stated" and does not fall within one of the enumerated exceptions. *Murray* v. *Supreme Lodge, N. E. O. P.*, 74 Conn. 715, 718, 52 A. 722 (1902). "As a preliminary matter, the trial judge must determine whether an utterance qualifies under [an] exception to the hearsay rule, and that decision will not be disturbed on appeal unless it constitutes an unreasonable exercise of discretion. *State* v. *Stange*, [212 Conn. 612, 616–17, 563 A.2d 681 (1989)]; *State* v. *Chesney*, 166 Conn. 630, 638, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974); *Perry* v. *Haritos*, [100 Conn. 476, 484, 124 A. 44 (1924)]." *State* v. *Cayouette*, 25 Conn. App. 384, 387, 594 A.2d 1020 (1991).

"In *Perry* v. *Haritos*, [supra, 100 Conn. 476], our Supreme Court recognized the spontaneous utterance exception to the hearsay rule. This exception allows otherwise inadmissible statements into evidence to prove the truth of the matter asserted if it is proven that (1) the declaration follows some startling occurrence, (2) the declaration refers to the occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant. *State* v. *Stange*, [supra, 212 Conn. 616–17]; *Perry* v. *Haritos*, supra, 484." *State* v. *Guess*, 44 Conn. App. 790, 803, 692 A.2d 849 (1997). The overarching consideration governing these requirements is whether the statements were made " 'before reasoned reflection had taken place.' " *State* v. *Dollinger*, 20 Conn. App. 530, 538, 568 A.2d 1058, cert. denied, 215 Conn. 805,

574 A.2d 220 (1990); *Rockhill* v. *White Line Bus Co.*, 109 Conn. 706, 708, 145 A. 504 (1929).

At trial, Bradley testified that the victim approached her booth at approximately 2:30 p.m. and asked that she call the police. Bradley complied and handed the receiver through the window to the victim so that she could speak to the police. After the victim completed the call, Bradley invited the victim inside where they conversed about what had happened to the victim over the past several hours. Sutton arrived and questioned the victim and took down her statements for his official incident report. Over the defendant's objection, the trial court allowed the entirety of both conversations to be admitted under the excited utterance exception to the hearsay rule. The testimony of both Bradley and Sutton consisted, in great part, of statements made to them by the victim.

The excited utterance exception "rests on the view that such assertions, made in reaction to a startling event, are trustworthy and void of self-interest. *Mei* v. *Alterman Transport Lines, Inc.*, [159 Conn. 307, 313–15, 268 A.2d 639 (1970)]." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.11.1, p. 373. We find that the victim had ample time to collect her thoughts prior to making those statements and, therefore, the statements lacked the spontaneity required under the excited utterance exception. Accordingly, we find that the reliability of the statements was undercut and that the statements were improperly admitted for substantive purposes under this exception to the hearsay rule.

The remaining issue raised by the defendant is whether these statements, improperly admitted for substantive purposes under the excited utterance exception, were so prejudicial that they mandate a reversal of the defendant's conviction. We find that they are not. When a statement has been improperly admitted

pursuant to an exception to the hearsay rule, the potential prejudice to the defendant arises from admission of the statements for substantive purposes. That prejudice is not present in this case. Prior to the charge to the jury, the trial court explained that both parties had stipulated that the victim's statements could be considered for substantive purposes.[8] We find that, under these circumstances, the error is harmless.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] The trial court informed the jury as follows: "[T]here has been a stipulation by the parties . . . . [They] have agreed that [Sutton's police report] may be considered substantively. . . . Also, [the victim] spoke to Patricia Bradley and spoke to Officer Sutton, in each case they relayed to you things that she said and it is agreed by the parties that [her statements to them] may be used for any purpose and may be considered substantively."