STATE OF CONNECTICUT *v.* RICHARD LOMAX
(AC 18648)

Foti, Zarella and Peters, Js.

Argued September 19—officially released November 7, 2000

*Mary Anne Royle*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David P. Gold,* former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Richard Lomax,[1] appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2)[2] and 53a-49,[3] attempt to commit larceny in the second degree

---

[1] The record discloses that the name Richard Lomax is an alias and that the defendant's name is McMillian Wright.

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[3] General Statutes § 53a-49 provides: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

in violation of General Statutes §§ 53a-123 (a) (3)[4] and 53a-49, carrying a pistol without a permit in violation of General Statutes § 29-35[5] and interfering with an officer in violation of General Statutes § 53a-167a.[6] The

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[4] General Statutes § 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

[5] General Statutes § 29-35 provides: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. The provisions of this subsection shall not apply to the carrying of any pistol or revolver by any sheriff, parole officer or peace officer of this state, or sheriff, parole officer or peace officer of any other state while engaged in the pursuit of his official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person carrying any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while carrying the same from the place of sale to the purchaser's residence or place of business, or to any person removing his household goods or effects from one place to another, or to any person while carrying any such pistol or revolver from his place of residence or business to a place or person where or by whom such pistol or revolver is to be repaired or while returning to his place of residence or business after the same has been repaired, or to any person carrying a pistol or revolver in or through the state for the purpose of taking part in competitions or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any other state or subdivision of the United States, or to any person carrying a pistol or revolver to and from a testing range at the request of the issuing authority, or to any person carrying an antique pistol or revolver, as defined in section 29-33.

"(b) The holder of a permit issued pursuant to section 29-28 shall carry such permit on his person while carrying such pistol or revolver."

[6] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

defendant was found not guilty of robbery in the first degree and larceny in the second degree. The defendant claims that (1) the court improperly admitted hearsay evidence and (2) the evidence presented was insufficient to support his conviction of attempt to commit robbery in the first degree and attempt to commit larceny in the second degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On Sunday, May 12, 1996, Sidney Collier, a member of the New Haven police department, was working in uniform on an extra duty security assignment at an open field flea market on Ella Grasso Boulevard in New Haven. At approximately 3:25 p.m., a vendor approached Collier and directed him to a disturbance. As Collier neared the scene, he observed the victim, Tywan Grier, on the ground. The victim was on his back with his hands, palms up, beside his head. The defendant was kneeling over him, holding a chrome gun in his right hand, pointed about twelve inches from the victim's face. Collier saw the defendant pat the victim's front pants pockets and attempt to put his hand in those pockets. As Collier drew his service weapon, the defendant got up and ran. Collier pursued the defendant for more than one block before subduing him. The defendant still possessed the handgun, which was capable of being fired and had a live round of ammunition in its chamber. The defendant also had a gold chain with a medallion and two separate bundles of money. The victim, who was still very nervous, arrived at the scene of the arrest. At that time, he identified the gold chain with the medallion as being his property. The victim's identification of his property took place within two to three and one-half minutes after the incident.

I

The defendant claims that the court violated his fundamental right to a fair trial under both the confronta-

tion and due process clauses of the United States and Connecticut constitutions. He claims violations of the fifth, sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the constitution of Connecticut.[7] He claims that the court improperly admitted Collier's testimony as to the victim's identification of his property under the spontaneous utterance exception to the hearsay rule. He argues that since the victim was available to testify and the state failed to call him, Collier's testimony should not have been admitted under the spontaneous utterance exception. We disagree.

Because the admissibility of evidence under a well established exception to the hearsay rule is not a constitutional issue, as the defendant presents it, we will analyze it as an evidentiary issue. "Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Cole*, 50 Conn. App. 312, 330–31, 718 A.2d 457 (1998), aff'd, 254 Conn. 88, 755 A.2d 202 (2000). "It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances

---

[7] The defendant has failed to provide this court with any independent analysis of his claim under the state constitution. Accordingly, we will limit our review to the federal constitution. See *State* v. *Porter*, 241 Conn. 57, 133 n.77, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998).

surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *Wright* v. *Hutt*, 50 Conn. App. 439, 445, 718 A.2d 969, cert. denied, 247 Conn. 939, 723 A.2d 320 (1998). "It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. *Higgins* v. *Karp*, 243 Conn. 495, 506, 706 A.2d 1 (1998)."[8] (Internal quotation marks omitted.) *Wright* v. *Hutt*, supra, 453.

The defendant's claim fails for two reasons. We conclude that the court properly admitted the evidence, but even if we assume arguendo that the evidence was improper, the error was harmless.

A

Connecticut recognizes the spontaneous utterance exception to the hearsay rule. See *Perry* v. *Haritos*, 100 Conn. 476, 124 A. 44 (1924). A court may allow into evidence otherwise inadmissible statements to prove the truth of the matter asserted, if "(1) the declaration follows some startling occurrence, (2) the declaration refers to the occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for delibera-

---

[8] We note that our Supreme Court has observed that two standards exist for establishing harm. "One line of cases states that the defendant must establish that it is more probable than not that the erroneous action of the court affected the result. . . . A second line of cases indicates that the defendant must show that the prejudice resulting from the impropriety was so substantial as to undermine confidence in the fairness of the verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Marshall*, 246 Conn. 799, 812, 717 A.2d 1224 (1998); *State* v. *McNair*, 54 Conn. App. 807, 814, 738 A.2d 689, cert. denied, 251 Conn. 913, 739 A.2d 1249 (1999). In this case, the defendant has not satisfied his burden under either formulation.

tion and fabrication by the declarant. . . . The overarching consideration governing these requirements is whether the statements were made before reasoned reflection had taken place." (Internal quotation marks omitted.) *State* v. *Torres*, 58 Conn. App. 524, 530, 754 A.2d 200 (2000). "The excited utterance exception rests on the view that such assertions, made in reaction to a startling event, are trustworthy and void of self-interest." (Internal quotation marks omitted.) *State* v. *Bowman*, 46 Conn. App. 131, 141, 698 A.2d 908 (1997). The time that transpired between the occurrence and the statement is merely a factor to be weighed along with any other material facts in the circumstances surrounding the statement in determining whether it was spontaneous. *State* v. *Stange*, 212 Conn. 612, 618, 563 A.2d 681 (1989).

In the present case, the victim uttered the challenged statement concerning the ownership of the item found in the defendant's possession while the victim was still under the stress of just having had a gun pointed at his head as he lay on the ground during an attempt to commit robbery. The statement was made within a few minutes of that "startling event." It would have been reasonable for the court to conclude that the trauma sustained by the victim occurred under circumstances that sufficiently negated the opportunity for deliberation and fabrication. We therefore conclude that the court did not abuse its discretion in admitting the statement into evidence under the spontaneous utterance exception to the hearsay rule.

### B

We also conclude that even if the statement should not have been admitted into evidence, its admission was nonetheless harmless under the circumstances of this case.

Admission of a statement that is either irrelevant or impermissible hearsay is not a constitutional error. *State* v. *Booth*, 250 Conn. 611, 662, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000). The court made an evidentiary ruling, not constitutional in nature, which requires the defendant on appeal to establish harmfulness. See *State* v. *Green*, 55 Conn. App. 706, 710, 740 A.2d 450 (1999), cert. denied, 252 Conn. 920, 744 A.2d 438, cert. denied, 529 U.S. 1136, 120 S. Ct. 2019, 146 L. Ed. 2d 966 (2000). The defendant must show that it is more probable than not that the court's ruling affected the result of the trial; see *State* v. *McIntyre*, 242 Conn. 318, 329, 699 A.2d 911 (1997); or that the prejudice resulting from the impropriety was so substantial as to undermine confidence in the fairness of the verdict. See *State* v. *Askew*, 245 Conn. 351, 371–72, 716 A.2d 36 (1998).

The defendant was acquitted of the charges of robbery in the first degree and larceny in the second degree. He was convicted of the crimes of attempt to commit robbery and attempt to commit larceny. The state was not required, under either of the attempt charges, to prove that the defendant actually took the chain from the victim. Consequently, the victim's statement was irrelevant to the defendant's conviction of those charges and, therefore, he suffered no harm because of the statement's admission.

## II

The defendant next claims that the state failed to prove beyond a reasonable doubt every essential element of the crimes of attempt to commit robbery in the first degree and attempt to commit larceny in the second degree.

"When reviewing sufficiency of the evidence claims, we employ a two part analysis. First, we construe the

evidence in the light most favorable to sustaining the verdict. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993). Second, we determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. *State* v. *Hooks*, 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993); *State* v. *Salz*, supra, 31." (Internal quotation marks omitted.) *State* v. *Watson*, 50 Conn. App. 591, 604, 718 A.2d 497, cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied, 526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999).

" '[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence.' *State* v. *Sivri*, 231 Conn. 115, 646 A.2d 169 (1994). 'On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty.' Id., 134." *State* v. *Rogers*, 50 Conn. App. 467, 473, 718 A.2d 985, cert. denied, 247 Conn. 942, 723 A.2d 319 (1998).

The defendant in his principal brief argues that "[n]o evidence introduced at trial established that the conduct between Grier and the defendant constituted attempt to commit robbery and attempt to commit larceny." He claims that the victim's statement was insufficient to prove the elements of the crimes, and that "[t]he state failed to use its key material witness in this case" so that the "circumstances surrounding the event" could never be tested by cross-examination.

The jury reasonably could have found, on the basis of the evidence presented and the reasonable inferences

drawn therefrom, that the defendant, while holding the victim on the ground, pointed a loaded handgun at the victim's head and attempted to take property from the victim's front pockets. Collier's testimony, which was based on his observations, was sufficient to establish the necessary elements of the crimes without the need of the victim's testimony.[9] See *State* v. *Caballero*, 49 Conn. App. 486, 492–93, 714 A.2d 1254, cert. denied, 247 Conn. 924, 719 A.2d 1170 (1998).

The judgment is affirmed.

In this opinion the other judges concurred.

___

[9] Because the state did not present the victim as a witness, the defendant received the benefit of a *Secondino* instruction. See *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960), overruled, *State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). The court instructed the jury that if it found that the victim was available and was someone that the state would naturally produce as a witness, it could infer that had the victim testified, his testimony would not have been favorable to the state.