STATE OF CONNECTICUT *v.* CECIL J.[1]
(AC 26510)

Bishop, DiPentima and Peters, Js.

---

[1] In accordance with our policy of protecting the privacy interests of victims of sexual abuse, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued October 11, 2006—officially released January 23, 2007

*Darcy McGraw*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Eva B. Lenczewski*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. In this criminal appeal, the principal issue is whether the exclusion of evidence of prior sexual conduct pursuant to the rape shield statute, General Statutes § 54-86f, violated the defendant's constitutional right to confrontation and to present a defense against charges of sexual assault. See *State* v. *Rolon*, 257 Conn.

156, 777 A.2d 604 (2001). The defendant challenges two evidentiary rulings of the trial court and the court's denial of a requested continuance. We affirm the judgment of the trial court.

In a three count amended information, the state charged the defendant, Cecil J., with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[2] sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2)[3] and risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53a-21 (2).[4] After accepting the verdict of the jury finding the defendant guilty on all three counts, the court sentenced him to seventeen years of incarceration and five years of special parole.[5]

In the defendant's appeal from this adverse judgment, he raises three claims. He maintains that the court (1)

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or third person . . . ."

[3] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[4] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child shall be guilty of a class C felony."

[5] More specifically, the defendant was sentenced on the first count to fifteen years incarceration, ten of which are the mandatory minimum, and five years of special parole; the defendant was sentenced to seventeen years incarceration on the second count and five years on the third count. All sentences were to run concurrently for a total effective sentence of seventeen years, ten years of which are mandatory, and five years of special probation. The defendant was also ordered to pay a fine of $151. The court, sua sponte, corrected the original sentences imposed March 8, 2005.

improperly granted the prosecution's motion in limine to restrict testimony relating to the victim's sexual activity with two of his siblings, (2) misapplied the medical treatment hearsay exception to admit into evidence a written statement by the victim incriminating the defendant and (3) abused its discretion in denying a request for a continuance to enable defense counsel to interview a witness before his testimony on the witness stand. We are not persuaded.

The jury reasonably could have found the following facts. The defendant had been a member of the male victim's household and had been in a relationship with the victim's mother from the time the victim was two years old. The household also included the victim's mother, brother and two half-brothers. On an unspecified, snowy vacation day during the 1998-1999 school year, the nine year old victim was at home playing video games with his two younger half-brothers, M and A. The defendant asked the victim to step out of the living room with him and to go into the bathroom. Although the victim initially resisted going there, when he was threatened with a beating, he did as he was told.

After closing the bathroom door, the defendant ordered the victim to pull down his pants and to lean over the bathtub. Once the defendant had pulled his own pants down, he held the victim in place and anally penetrated him. Hearing the apartment door open, the defendant warned the victim not to say anything. The victim's mother overheard this warning and saw the victim and defendant pulling up their pants. Although she inquired about what was going on, the victim responded that nothing had happened.

After an altercation between the defendant and the victim's mother, the defendant left. Examining the victim's rectal area, the mother found it to be red and swollen. The mother called the family's pediatrician to

express her concern that the victim might have been sexually abused. Although she was advised to take the victim to a hospital, she did not do so because the pediatrician would not confirm, over the telephone, that the victim had been sexually assaulted.

After this incident, the victim slept more often on the couch in the living room. Some nights, he would wake up to see the defendant running away. He would then become aware of the fact that his pants were down and sometimes would experience pain in his face or his anus.

At some time subsequent to these incidents, the victim was sent away from his home to live at the Stetson School in Massachusetts.[6] During one of the victim's therapy sessions at the school, the victim's mother asked him what he thought about the defendant. The victim answered that the defendant was a sexual predator. Asked by his therapist to clarify what he meant by that, he declined to do so orally but wrote his answer down. He explained that he was still too nervous about what had happened to be able to talk about the events out loud.

I

The defendant's principal claim is that, by excluding evidence of sexual misconduct between the victim and his siblings, the trial court violated the defendant's rights to confront witnesses and to present a defense under the sixth amendment to the United States constitution. The defendant maintains that he should have been able to present evidence that the victim was sexually abused by an older brother and in turn had sexually

---

[6] The Stetson School is a school for the placement and treatment of adolescent sex offenders. Although no evidence was ever admitted during the trial to explain why the victim was placed there, it appears from the record and the defendant's briefs that the victim may have sexually abused one of his younger brothers prior to the incident that gives rise to this case.

abused one of his younger brothers. According to the defendant, the victim blamed the defendant for bringing this misconduct to light, thereby causing the department of children and families to send the victim to the Stetson School. Relying on the rape shield statute, § 54-86f, the trial court excluded proffered evidence relating to the victim's alleged sexual interactions with his brothers. We conclude that the trial court's exclusion of this evidence did not violate the defendant's sixth amendment rights because such evidence was properly excluded as irrelevant.

We first set forth the standard of review for determining whether the court properly excluded this evidence. "Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Rolon,* supra, 257 Conn. 173.

We begin our analysis by examining the language of § 54-86f.[7] Subject to certain exceptions, the rape shield

---

[7] General Statutes § 54-86f provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a

statute prohibits evidence of the victim's sexual conduct from being admitted into evidence. Despite the defendant's claim that three of those exceptions are applicable, the only exception at issue in this case is subdivision (4) of the statute.[8] Subdivision (4) permits evidence to be introduced if that evidence is "otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. . . ." General Statutes § 54-86f (4). Unless the defendant makes a showing that the evidence sought to be admitted falls under one of the exceptions, evidence of the victim's sexual conduct is excluded under § 54-86f.

A defendant who seeks to introduce evidence under one of the exceptions of § 54-86f must first make an

---

trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

[8] The defendant claims that the victim's sexually reactive behavior and possible abuse by his brother F were admissible to show that the victim's "injury," i.e., his psychological problems, were attributable to a source other than the defendant. Subdivision (1) is, however, inapplicable because psychological trauma is not recognized as an injury for purposes of the statute. See *State* v. *Rolon*, supra, 257 Conn. 167 n.18.

The defendant also claims that he was entitled to introduce evidence of the victim's sexual history because the victim testified about sexual contact with the defendant on direct examination. Subdivision (2) does not apply to granting of the motion in limine because the statute requires the victim to have testified "on direct examination as to his or her sexual conduct." General Statutes § 54-86f (2). Where the only sexual conduct to which the victim testifies is the alleged sexual conduct by the defendant, subdivision (2) does not apply. See *State* v. *Harrison*, 34 Conn. App. 473, 480–81, 642 A.2d 36, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994). In this case, the only sexual conduct testified to by the victim was that allegedly perpetrated by the defendant. Thus, the defendant's offer of proof of prior sexual conduct could not be admitted under subdivision (2).

offer of proof. General Statutes § 54-86f ("[s]uch evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof"). Although a defendant may be entitled to an evidentiary hearing during which he may demonstrate that the evidence would be admissible under one of the exceptions to § 54-86f, such a hearing is required only if the trial court first determines that the evidence is relevant. *State* v. *Manini*, 38 Conn. App 100, 114–15, 659 A.2d 196, cert. denied, 234 Conn. 920, 661 A.2d 99 (1995); see also *State* v. *Barrett*, 43 Conn. App. 667, 674, 685 A.2d 677, cert. denied, 240 Conn. 923, 692 A.2d 819 (1997).

"Determining whether evidence is relevant and material to critical issues in a case is an inherently fact-bound inquiry. . . . As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence is properly excluded." (Citations omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 270 Conn. 826, 837–38, 856 A.2d 345 (2004).

The defendant in this case sought to introduce evidence of the victim's sexual history through the testimony of a therapist at the Stetson School and of the defendant himself. The trial court determined that the evidence was irrelevant and did not, therefore, conduct an evidentiary hearing on the proffered evidence. In reviewing this decision by the trial court, we examine the relevancy of both the proffered evidence relating to the victim's alleged abuse by his older brother and

the proffered evidence of the abuse allegedly perpetrated by the victim on his younger brother.

A

We first review whether the trial court properly excluded, on the ground that it was irrelevant, the proffered evidence relating to the victim's alleged abuse by his older brother, F. The only fact asserted by the defendant in this offer of proof was that F had abused the victim some time between 1998 and 1999. Declining to provide any further details about a specific date, time or place of this alleged incident, the defendant asserted only that the abuse by the victim's older brother "did, in fact, happen."

Evidence admitted under subdivision (4) of § 54-86f must be both material and relevant in order to be so critical that its exclusion could lead to a violation of the defendant's constitutional rights. *State* v. *DeJesus*, supra, 270 Conn. 844 n.18. The possibility that a child victim's sexual knowledge resulted from an encounter with someone other than the defendant may be relevant and material to a defendant's defense of mistaken identity or false accusation. *State* v. *Rolon*, supra, 257 Conn. 183–84. "[I]f the jury is not allowed to learn of the [prior sexual] offenses against [the] complainants, then [it] will inevitably conclude that the complainants' highly age-inappropriate sexual knowledge could only come from [the] defendant having committed such acts. . . . Without that evidence, [t]he inference that [a victim] could not possess the sexual knowledge he [or she] does unless [a defendant] sexually assaulted [him or her] greatly bolsters [a victim's] allegations. . . . In order to rebut that inference, [the defendant] must establish an alternative source for [the victim's] sexual knowledge . . . [as] a necessary and critical element of [his] defense. . . . Simply put, the prior sexual conduct must account for how the child could provide the

testimony's sexual detail without having suffered [the] defendant's alleged conduct." (Citations omitted; internal quotation marks omitted.) Id., 185–86.

For evidence to be admitted pursuant to *Rolon*, however, "the defendant must make an offer of proof showing: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to [the] defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect."[9] (Internal quotation marks omitted.) Id., 184.

The trial court, in this case, decided that the evidence relating to F's alleged abuse of the victim was inadmissible because, in the absence of further details, the proffered evidence was irrelevant to show a linkage between the two allegedly similar incidents of abuse. The court stated that "certainly what the statute and the cases interpreting it require is for me to find that the evidence of the type that you're referring to is admissible. For me to make that—to reach that conclusion, there needs to be a close proximity in time and place, a similarity of the abuse, between what's alleged by the state with respect to the defendant in this other matter for it to be admissible." In the absence of such an evidentiary proffer, the court denied the defendant's motion for introduction of such evidence.

The defendant challenges the validity of the trial court's ruling, claiming that, in light of *Rolon*, it was sufficient for him to have alleged a temporal overlap, between 1998 and 1999, of the alleged incident with F and the allegation against the defendant. We disagree.

We first note that unlike *Rolon*, the alleged victim in this case was not a preschool-aged child, but a boy who

---

[9] The court specifically enumerated these factors when it clarified its reasoning for excluding evidence of the victim's sexual history.

was fifteen years old at the time he testified. In *State* v. *Rolon*, supra, 257 Conn. 181, our Supreme Court focused on the risk that a very young victim would be more likely than a fifteen year old to misidentify his or her sexual abuser.

Even if, however, we were to disregard the significance of the age difference between the victim in *Rolon* and the victim in this case, we would still conclude that the trial court's ruling was proper because of the lack of specificity of the defendant's offer of proof. Besides putting forth a general time frame for when the incident with F may have occurred, the defendant failed to establish *any* other facts about this incident that would establish the proximity between the two incidents, including the location and manner in which the incident with F occurred. On this record, the court's ruling was not an abuse of its discretion.

B

We next review whether the trial court properly excluded, on the ground of irrelevance, the evidence proffered by the defendant that related to the victim's alleged abuse of his younger brother. At trial, the defendant claimed that the evidence was relevant to show that the victim had a motive for testifying against the defendant because the victim resented the fact that the defendant had brought the victim's abuse of his younger brother to the attention of the authorities and had caused the victim to be sent away to school. On appeal, the defendant claims that evidence of this conduct should have been admitted under subdivision (1) of § 54-86f because the sexually reactive behavior of the victim, namely, his abuse of his younger brother, could have established that the defendant was not the source of the victim's psychological injuries. Such evidence, the defendant argues, was necessary to buttress his

defense that the victim had accused him falsely. We are not persuaded.

This issue arose at trial when,[10] prior to the testimony of the victim's therapist, the state informed the court that it might be questioning the therapist, in part, about the sexually reactive behavior of the victim.[11] The court allowed the therapist to testify as long as both parties avoided any reference to the victim's abuse of his younger brother.[12]

The only time either party failed in following the trial court's warning to avoid the subject of the victim's sexual abuse of his younger brother was during the defense counsel's cross-examination of the therapist: "[D]o you know if anyone committed [the victim] to

[10] The court declined to make a ruling on evidence of sexual abuse or sexually reactive behavior prior to trial. Instead, the court indicated that it would rule on the motion if either party "decided to offer any evidence as to allegations of sexual abuse or sexually reactive conduct on the part of the victim." If this happened, the court would then excuse the jury and take up the matter further.

[11] When asked what specifically the prosecution intended to introduce, the prosecutor stated: "[The therapist] works as an adolescent sex offender therapist. She specified certain conduct that she sees in [the victim] that is consistent with what she knows to be occurring with other individuals who have been abused and are engaging then in sexual reactive conduct or abuse conduct against others."

[12] The following colloquy took place at trial:

"The Court: Correct me if I'm wrong, but it's pretty clear to me that you don't have any specific, specific information; that you don't have hard, credible evidence to introduce regarding the nature of any sexual conduct that the victim may have had with his siblings in terms of the proximity to the date that the defendant is alleged to, to have had sexual contact with the victim or any other matter and that, and that failure of you to be able to make such a proffer is why I must exclude this evidence under the rape shield statute.

"[Defense Counsel]: Yes. I understand that, Your Honor. You're correct.

"The Court: All right. So, having said all of that, I don't think this evidence can come in, and I don't think it would be appropriate . . . that there be references to the victim's therapy that reveal that he has been placed in this location because he is alleged to have engaged in sexually inappropriate contact—conduct with others."

the Stetson School?" After objection and a discussion at sidebar, defense counsel withdrew this question and asked, "[w]as it [the department of children and families that] caused [the victim] to come to Stetson School?" The therapist answered, "I believe so."[13]

The defendant argues that evidence of the source of the victim's sexually reactive behavior should have been admitted under subdivision (1) of the rape shield statute because this evidence would have shown that the defendant's abuse was not the source of such behavior. As noted previously; see footnote 8; psychological trauma is not considered an "injury" for purposes of this subdivision. Moreover, the defendant has failed to demonstrate how this evidence of sexually reactive behavior, although related to the excluded evidence of F's abuse of the victim, could be admitted under another exception to the rape shield statute. We therefore conclude that the court properly granted the motion in limine to prohibit evidence of the victim's sexually reactive behavior.

II

The defendant next claims that the court improperly admitted into evidence a written statement made by the victim in a therapy session at the Stetson School. The defendant argues that the written statement is hearsay that was not admissible under the medical treatment exception to the rule barring hearsay because the statement did not have the traditional indicia of reliability that ordinarily validate a statement made to a health

---

[13] Defense counsel asked a similar question to the defendant when he testified:

"[Defense Counsel]: Why do you think [the victim] would make these accusations?

"[The Defendant]: [The victim] would make these accusations because I reported him to [the department of children and families] at the time."

care professional.[14] To the contrary, the defendant claims that the victim had every reason to lie about the identity of his abuser because the victim blamed the defendant for his placement at the Stetson School. We are not persuaded.

Because the defendant's claim is evidentiary, not constitutional,[15] in nature, "[o]ur standard of review . . . is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Citations omitted; internal quotation marks omitted.) *State* v. *Lomax,*

[14] Connecticut Code of Evidence § 8-3 (5) provides: "A statement made for purposes of obtaining medical treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical treatment or advice."

[15] The defendant does not argue that the admission of this statement violated his constitutional right to confront a witness who made an out-of-court statement. See *Crawford* v. *Washington,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The defendant claims, instead, that the statement did not qualify as one made "for purposes of obtaining medical treatment" as required by § 8-3 (5) of the Connecticut Code of Evidence.

60 Conn. App. 602, 607–608, 760 A.2d 957, cert. denied, 255 Conn. 920, 763 A.2d 1042 (2000).

Our analysis of the court's admission of the victim's written statement for abuse of discretion begins with an examination of the statement itself. The statement was written by the victim while in therapy on February 27, 2003. In response to his therapist's questions about why the victim had called the defendant a sexual predator, the victim wrote that "X flashe[d] me and try to stick his penis up my butt." Later during the same therapy session, the victim explained that "X" referred to the defendant.

The state offered this statement into evidence for the truth of the matter asserted while the victim was testifying during the state's case-in-chief. Over objection, the court held the statement to be admissible under the medical treatment exception to hearsay stated in the Connecticut Code of Evidence § 8-3 (5).[16] The defendant claims that this written statement was admitted improperly because it lacked the traditional indicia of reliability that support the admission of hearsay statements.

Our Supreme Court has addressed the question of whether a statement made by a victim of domestic

[16] The court gave the following reason for admitting the written statement: "I'm going to admit state's exhibit number seven as a full exhibit under [*State* v. *Dollinger*, 20 Conn. App. 530, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990)], which says that such statements are admissible. The wrinkle is that generally the identity of the person responsible for the injuries, whether they are physical or psychological, that lead to treatment are not allowed under the medical treatment exception.

"The exception to that rule, however, is that in cases, 'in cases of sexual abuse in the home, hearsay statements made in the course of medical treatment which reveal the identity of the abuser, are reasonably pertinent to treatment and are admissible. . . . If the sexual abuser is a member of the child victim's immediate household, it is reasonable for a physician to ascertain the identity of the abuser to prevent recurrences and to facilitate the treatment of psychological and physical injuries.' " Quoting *State* v. *Dollinger*, supra, 535.

sexual abuse may be admitted under the medical treatment hearsay exception. "Out-of-court statements made by a patient to a physician may be admitted into evidence if the declarant was seeking medical diagnosis or treatment, and the statements are reasonably pertinent to achieving these ends. . . . Statements concerning the cause of the injury or the identity of the person who caused the injury usually are not relevant to treatment and, therefore, are not admissible under the medical diagnosis and treatment exception to the hearsay rule. . . . However, [i]n cases of sexual abuse in the home, hearsay statements made in the course of medical treatment which reveal the identity of the abuser, are reasonably pertinent to treatment and are admissible. . . . If the sexual abuser is a member of the child victim's immediate household, it is reasonable for a physician to ascertain the identity of the abuser to prevent recurrences and to facilitate the treatment of psychological and physical injuries." (Citations omitted; internal quotation marks omitted.) *State* v. *DePastino*, 228 Conn. 552, 565, 638 A.2d 578 (1994).

*DePastino* governs the admissibility of the written statement in this case. The record contains nothing that could lead to an inference that the victim's written statement was for any purpose other than psychological therapy. The statement was made during a family therapy session conducted at the Stetson School. The court, therefore, did not abuse its discretion by permitting the introduction of the written statement pursuant to the medical treatment exception to the hearsay rule.

## III

Finally, we address the defendant's claim that the trial court abused its discretion by refusing to grant him a continuance to permit defense counsel to interview the victim's younger brother, M, prior to calling him as a defense witness. The defendant argues that

the trial court was required to grant the continuance because counsel had been prevented from meeting with the witness earlier due to a motion to quash the defendant's subpoena filed on the morning of M's testimony by M's guardian ad litem. We are not persuaded.

Our discussion of this claim begins with our well settled standard of review. "[T]he determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . In addition, we consistently have acknowledged that [o]ur role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives." (Citation omitted; internal quotation marks omitted.) *State* v. *Rivera*, 268 Conn. 351, 378, 844 A.2d 191 (2004).

In *Rivera*, our Supreme Court also identified "a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel

and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . ." (Internal quotation marks omitted.) Id., 379.

The underlying circumstances that gave rise to the request for a continuance in this case are undisputed. Although M, the victim's younger brother, had been subpoenaed to testify by the defendant, M's guardian ad litem filed a motion to quash the subpoena, alleging that forcing M to testify would be harmful to him.

In denying the motion to quash, the court ruled: "I am going to permit M to testify under very strict limitations. Counsel's examination, defense counsel's examination will be limited solely to the alleged incident that took place at the apartment. It is not to go beyond that. It is to be an examination about what M heard, saw and did on that day.

"The other additional area I will allow you to inquire, to make inquiry about is whether or not prior to the time of the incident, M witnessed any physical abuse by the defendant of the victim. Counsel is not to inquire beyond that."

After learning that M would be allowed to be called as a witness, defense counsel requested the continuance: "I'd like to have at least fifteen or twenty minutes to meet with M so that I can review the questions so he's not frightened by what I'm going to ask him." The guardian ad litem, however, opposed such a meeting between defense counsel and M because "it would just add to the emotional stress that this eleven year old is feeling. He feels tremendous responsibility, and I think having him questioned or, or going over questions with him ahead of time is just going to create an untenable situation for this little boy."

Before making its final ruling on the defendant's motion, the court reminded the defendant that he had been given months to issue subpoenas and interview potential witnesses. In denying the defendant's motion, the court stated: "Particularly where I do not have control at this point of the, the manner in which he is going to be interviewed by anybody, your request is denied." As part of this denial, the court directed M's guardian ad litem to inform M of the matters on which he would be testifying when he came into court.

The defendant claims that the court abused its discretion by denying defense counsel the opportunity to meet with M prior to testimony. The two grounds on which the trial court rested its denial of the motion for a continuance were the timeliness of the motion and the impact that the continuance would have on the witness. The defendant challenges the validity of each of these grounds.

A

The defendant claims that the motion for a continuance should have been granted because it was timely. The defendant's counsel had received records of the victim's psychological treatment only that week. According to the defendant, the need to question M about information contained in these records did not arise until that week. In his view, the motion was timely because it was made as soon as the need for a continuance became apparent.

Although defense counsel may have desired to explore the contents of these treatment records with M before his testimony, the defendant did have, as the court mentioned, months beforehand to interview potential witnesses. More importantly, for purposes of examining the timeliness of this particular motion, the defendant also had months in which to seek judicial orders that would permit him to question witnesses

who might otherwise be unavailable to testify. Although the defendant's receipt of these records during the week of trial may have altered the focus of the interview with M had the continuance been granted, the content of these records did not change the availability of M to be subpoenaed and interviewed in the months prior to trial. In light of the defendant's opportunity to subpoena M in the months before trial, the trial court properly denied the motion for a continuance as untimely.

B

The defendant also claims that the motion for a continuance was improperly denied because a continuance would not have affected the parties or witnesses. The defendant argues that the only person who would have been affected by the continuance would have been M and that the effect on M could have been minimized by the presence of his guardian ad litem during any questioning. The court was entitled to take a different view of the impact on M of being questioned by defense counsel. In denying the continuance, the court stated: "Particularly where I do not have control at this point of the . . . manner in which he is going to be interviewed by anybody, your request is denied."

Viewing the record as a whole, we conclude that the trial court properly considered the effect that the continuance would have on M. For us to conclude that the court improperly denied the motion for a continuance because the interview would not have negatively affected M would be for us to substitute our judgment for the judgment of the trial court. That is not our role. *State* v. *Rivera*, supra, 268 Conn. 378. We conclude, therefore, that the trial court properly denied the motion for a continuance.

The judgment is affirmed.

In this opinion the other judges concurred.