# STATE OF CONNECTICUT *v.* LUIS DEJESUS, JR.
## (SC 16782)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued April 21—officially released September 7, 2004

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, was *Scott J. Murphy*, state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant appeals[1] from the trial court's judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[2] and kidnapping in the first degree in violation of General Statutes § 53a-

---

[1] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person . . . ."

92 (a) (2) (A).[3] The defendant claims, among other things,[4] that the trial court deprived him of his constitutional rights to confront witnesses against him and to present a defense by precluding him from questioning the victim about her prior history of prostitution. We agree with the defendant and, accordingly, we reverse the judgment of the trial court and remand the case for a new trial.[5]

The defendant, Luis DeJesus, Jr., was charged with sexual assault in the first degree in violation of § 53a-70 (a) (1), and kidnapping in the first degree in violation of § 53a-92 (a) (2) (A). The jury found the defendant guilty of both charges and the trial court rendered judgment of conviction on the verdict. This appeal followed.

The jury reasonably could have found the following facts. On the morning of March 21, 2001, the victim, Tina C.,[6] went to the defendant's residence in New Britain seeking employment as a day laborer. The defendant operated a roofing business and, approximately one

---

[3] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) . . . violate or abuse him sexually . . . ."

[4] The defendant also claimed that: (1) the trial court deprived him of his constitutional right to a trial by an impartial jury by refusing to canvass the jurors to determine if any of them had read a prejudicial newspaper article relating to the trial; (2) § 53a-92 (a) (2) (A), as applied to this case, violated his constitutional due process rights because it is unconstitutionally vague; and (3) the trial court violated his constitutional due process rights by incorrectly responding to a jury question concerning an essential element of kidnapping.

[5] Because this claim of the defendant is dispositive of this appeal, and because we cannot say that the remaining issues; see footnote 4 of this opinion; will likely arise on retrial, we decline to reach the merits of the defendant's remaining claims. *State* v. *Cerreta*, 260 Conn. 251, 258, 796 A.2d 1176 (2002).

[6] In accordance with General Statutes § 54-86e, as amended by Public Acts 2003, No. 03-202, § 15, and this court's policy of protecting the privacy interests of victims in sexual abuse matters, we decline to identify the victim by name, or others through whom the victim's identity may be ascertained.

and one-half to two years earlier, he had employed the victim as a day laborer for a period of one day when he first met her. Since that time, the victim had interacted socially with the defendant several times, including visiting his home. On at least one occasion, the victim had engaged in consensual sexual activity with the defendant.

Upon her arrival at approximately 7:30 a.m., the victim encountered the defendant in the parking lot of the apartment complex where he lived. The defendant was returning home from a bar, which was located about four blocks from the apartment complex, where he had consumed six or seven beers and then slept in his truck from approximately 3 a.m. until just before returning home that morning. The victim asked the defendant if he had any work for her that day. After the defendant told her that he had to make a telephone call to find out if any work was available, the victim accompanied the defendant into his apartment, where he went upstairs, while the victim sat on the couch in the living room. When the defendant joined the victim in the living room, he informed her that he was not sure if any work was available. During the conversation that followed, the defendant and the victim began to discuss the topic of sex.

When the defendant expressed an interest in engaging in sexual activity with the victim, she indicated that she wanted to go home. Thereafter, the defendant and the victim engaged in a struggle, during which he held her by her arms to prevent her from leaving the apartment. The defendant then forced the victim to submit to vaginal intercourse, which culminated in the defendant ejaculating onto the victim's stomach. After the defendant used a cloth towel and the victim used a paper towel to wipe the semen from her stomach, the victim used the defendant's bathroom. When the victim

returned from the bathroom, the defendant gave her $30, and she left the apartment.

After leaving the apartment, the victim stopped to put gas in her car, went to a shopping mall and subsequently returned home.[7] Later that day, the victim telephoned her mother to tell her that she possibly had been raped. After her mother advised her to report the incident to the police, the victim went to the New Britain police department between 5 p.m. and 6 p.m., where Officer John Gonzalez took her written statement about the incident and filed a report.

The following procedural history and the defendant's account of the incident[8] are also relevant to the resolution of this claim. At the beginning of the trial, the state filed a motion in limine requesting that the trial court prohibit the defendant from presenting evidence that the victim had engaged in or had claimed that she had engaged in prostitution, without a prior judicial ruling on the admissibility of such evidence. The state claimed that this evidence was irrelevant and prejudicial to the state's case. During argument on the motion, the state also claimed that the introduction of that evidence would violate General Statutes § 54-86f,[9] which is com-

---

[7] At one point during her testimony, the victim indicated that she went to the shopping mall before going home. Later in her testimony, the victim could not recall whether she went to the shopping mall or home first.

[8] The defendant did not testify at trial but did testify at the violation of probation hearing that resulted from the charges in the present case. At the time of this incident, the defendant was on probation for sexual assault in the first degree and tampering with a witness. The state, with the agreement of the defendant, entered the defendant's redacted sworn testimony from his violation of probation hearing by having the prosecutor read the testimony to the jury from the transcript of the hearing. In addition, the defendant had Detective Lawrence Betterini of the New Britain police department read the statement that the defendant gave Betterini after the defendant was placed under arrest.

[9] General Statutes § 54-86f provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was,

monly known as the rape shield statute. The defendant responded that he intended to inquire of the victim whether she had engaged in prostitution, whether she had told an investigating officer that she had engaged in prostitution, and whether the defendant was aware that she had engaged in prostitution. The defendant argued that the evidence was admissible under subdivision (4) of § 54-86f because it was relevant to a critical issue in the case, namely, whether the sexual intercourse was consensual, and the exclusion of the evidence would violate the defendant's constitutional rights to present a defense and confront the complaining witness.

The defendant's consent defense was predicated on the following account of the incident as set forth in evidence presented to the jury from the defendant's testimony at his violation of probation hearing and the statement that he gave to the police. When the defendant encountered the victim in the parking lot of the apartment complex, on the morning of March 21, 2001,

with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

he told her that he did not have any work at that time, but that if any work became available, he would call her. When the victim continued to ask the defendant about work, he invited her into his apartment to continue the discussion. The defendant had an expectation that the victim wanted to engage in sexual activity when he invited her into the apartment because of past experience with her. The victim followed the defendant into the apartment where the ensuing conversation eventually turned to the topic of sex. When the victim asked him whether he had a condom, the defendant went upstairs to search for a condom but was unable to find one. The defendant returned to the living room, told the victim that he could not find a condom, and they continued to talk. During the discussion, the victim indicated that she could not have sexual intercourse with the defendant without a condom because she had genital herpes. After the defendant informed the victim that he also had genital herpes, she began to act in a provocative manner and engaged in consensual foreplay, culminating in the victim removing her clothes and engaging in consensual vaginal intercourse with him. The defendant ejaculated onto the victim's stomach because she requested that he not ejaculate into her vagina. After the defendant wiped the victim and himself off with the cloth towel, the victim wiped herself off with the paper towel and went into the bathroom. The victim returned and started another conversation with the defendant. When the defendant indicated that he was tired and asked the victim to leave, she requested $50. The defendant expressed surprise because he had not paid the victim for previous sexual activity, but she insisted on receiving the $50. The defendant told the victim that he had only $30, which he gave to her. The victim then counted the money and suggested that she would return for the balance of the $50 that she had requested. The defendant told the victim not to do so

because his wife would be home. The victim stated, " 'I warned you,' " which the defendant understood to be a warning about the herpes, and then she left.

The trial court postponed a ruling on the state's motion to prohibit the defendant from introducing evidence regarding the victim's prior history of prostitution until after the victim had given her direct testimony. Following the victim's direct testimony, the trial court permitted the defendant to make an offer of proof outside the presence of the jury. The defendant, in preparing his defense, had obtained a copy of Gonzalez' report,[10] which included the victim's statements to Gonzalez that she had engaged in prostitution and that the defendant knew that she had engaged in prostitution. During his offer of proof, the defendant attempted to educe the victim's agreement that she had made the statements to Gonzalez.[11] The state objected to the evidence about the defendant's knowledge as being irrelevant, requiring speculation on the part of the victim, and being more prejudicial than probative. The defendant responded that the testimony was relevant and critical to the issue of consent, required no speculation on the victim's part, and helped establish a motive for the

[10] In the trial transcript, the defendant referred to the investigating officer's police report. Because Gonzalez subsequently testified that he had written a police report after taking the victim's statement, we assume that the defendant was referring to Gonzalez' report.

[11] The following colloquy occurred between the defendant's attorney and the victim during the defendant's offer of proof:

"Q. When you went to the police station to speak with the investigating officer, didn't you tell the officer that you engaged in prostitution?

"A. I don't recall.

"Q. Is it possible you could have said that?

"A. I don't know.

"Q. Didn't you tell the officer [that the defendant] was aware that you worked as a prostitute?

"A. Yes.

"Q. You did tell the officer that [the defendant] was aware of that?

"A. Yes."

victim to make false allegations of rape. The defendant also stated that precluding the inquiries would prejudice his defense. The trial court ruled that inquiries into whether the victim had asked for money, had accepted money or had been given money on the morning of March 21, 2001, were relevant, but that inquiries into "prostitution on prior occasions and the defendant's knowledge of [the victim's] prostitution or alleged prostitution on prior occasions [were] not relevant and any probative value [was] outweighed by the prejudicial effect."

The defendant claims that the trial court's ruling on the state's motion in limine deprived him of his constitutional rights to confront the witnesses against him and to present a defense under the sixth amendment to the United States constitution[12] as applied to the states through the fourteenth amendment to the United States constitution[13] by excluding evidence that the victim was a prostitute and that the defendant knew that the victim was a prostitute.[14] Specifically, the defendant contends that the trial court improperly excluded the evidence pursuant to § 54-86f as irrelevant and as having insufficient probative value to outweigh the prejudicial effect on the victim.[15] The defendant argues that the evidence

---

[12] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . and to have the assistance of counsel for his defense."

[13] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[14] Although the defendant also claims deprivation of his rights under the state constitution, he has failed to provide any independent analysis of the issues pursuant to the state constitution. Accordingly, we limit our analysis to those guarantees provided in the federal constitution. See State v. Fields, 265 Conn. 184, 190 n.8, 827 A.2d 690 (2003).

[15] The trial court's ruling did not make specific reference to § 54-86f. The parties had referred, however, to § 54-86f during argument before the trial court on the admissibility of the defendant's evidence. The trial court, moreover, adopted the language of § 54-86f in its ruling on the admissibility of the evidence.

was admissible pursuant to § 54-86f (4) because it was relevant to his defense of consent in that the jury could have inferred both that the sexual intercourse was an act of prostitution on the part of the victim because she accepted money from the defendant afterward, and that the victim had a motive to fabricate her testimony because she received less money than she had requested. Further, the defendant argues that the exclusion of the evidence was harmful and warrants a new trial because the victim's credibility was crucial to the case against him. We agree with the defendant.

"The primary interest secured by confrontation is the right to cross-examination . . . ." (Citation omitted.) *State* v. *Lubesky*, 195 Conn. 475, 481–82, 488 A.2d 1239 (1985). As an appropriate and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted. *Davis* v. *Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Christian*, 267 Conn. 710, 748, 841 A.2d 1158 (2004). Compliance with the constitutionally guaranteed right to cross-examination requires that the defendant be allowed to present the jury with facts from which it could appropriately draw inferences relating to the witness' reliability. *Davis* v. *Alaska*, supra, 318; *State* v. *Reynolds*, 264 Conn. 1, 59, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). "[P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment." *State* v. *Colton*, 227 Conn. 231, 249, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). Further, the exclusion of defense evidence may deprive the defendant of his constitutional right to present a defense. See, e.g., *Chambers* v. *Mississippi*, 410 U.S. 284, 289–90, 93 S. Ct. 1038, 35 L. Ed. 2d

297 (1973) (exclusion of testimony implicating uncharged individual in murder deprived defendant of right to present defense); *State* v. *Cerreta*, 260 Conn. 251, 264, 796 A.2d 1176 (2002) (exclusion of hair and fingerprint evidence directly connecting third party to murder deprived defendant of right to present defense).

Not every ruling that prevents the defendant from introducing evidence, however, rises to the level of a violation of his constitutional rights. *State* v. *Kulmac*, 230 Conn. 43, 54, 644 A.2d 887 (1994) (evidence of prior sexual abuse of victims by other men properly excluded under rape shield statute where no indication existed victims were confused about different events or other events implicated motive to make false allegations against defendant). "The defendant's right to confront witnesses against him is not absolute, but must bow to other legitimate interests in the criminal trial process." (Internal quotation marks omitted.) *State* v. *Mastropetre*, 175 Conn. 512, 521, 400 A.2d 276 (1978).

In a prosecution for sexual assault, § 54-86f sets forth the appropriate factors for consideration in determining the admissibility of evidence of the victim's sexual conduct. See footnote 9 of this opinion. The rape shield statute excludes evidence of an alleged victim's prior sexual conduct, with limited exceptions, for policy reasons. *State* v. *Christiano*, 228 Conn. 456, 469, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994). Such policies "include protecting the victim's sexual privacy and shielding her from undue harassment, encouraging reports of sexual assault . . . enabling the victim to testify in court with less fear of embarrassment . . . [and] avoiding prejudice to the victim, jury confusion and waste of time on collateral matters." (Citation omitted; internal quotation marks omitted.) Id., 469–70. Although the state has a substantial interest in promoting these goals, subdivision (4) of § 54-86f codifies the constitutional mandate that the

state's interest must yield to that of the defendant where the proffered evidence is "so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." Because the primary issue in the present case was whether the sexual intercourse was consensual, any evidence that was so relevant and material to the issue of consent that excluding it would have violated the defendant's constitutional rights was admissible under § 54-86f (4).

Determining whether evidence is relevant and material to critical issues in a case is an inherently fact-bound inquiry. "Relevance depends on the issues that must be resolved at trial, not on the particular crime charged." J. Tanford & A. Bocchino, "Rape Victim Shield Laws and the Sixth Amendment," 128 U. Pa. L. Rev. 544, 588 (1980). Consequently, the determination of whether the state's interest in excluding evidence under the rape shield statute must yield to the defendant's sixth amendment rights to confront the witnesses against him and to present a defense depends on the facts and circumstances of the particular case. See *State* v. *Christiano*, supra, 228 Conn. 470.

Therefore, we first must determine whether the trial court's ruling preventing the defendant from questioning the victim about " 'prostitution on prior occasions and the defendant's knowledge of her prostitution or alleged prostitution on prior occasions' " resulted in the exclusion of evidence that was so relevant to a critical issue in the case, namely, whether the sexual intercourse was consensual, that, subject to a determination of the materiality of the evidence, it could have violated the defendant's constitutional rights. We conclude that the evidence was sufficiently relevant to the issue of consent so as to result in such a violation, in that it supported the defendant's claim that the victim consented to the sexual intercourse and it suggested a motive for the victim to testify falsely.

"As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." (Internal quotation marks omitted.) *State v. Christiano*, supra, 228 Conn. 474. "If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded." Id.

The victim admitted telling an investigating officer that the defendant was aware that she had engaged in prostitution. Prostitution is commonly understood as engaging in sexual activity for money. In the present case, both parties agreed that sexual intercourse occurred, and the victim admitted that she accepted money from the defendant following the sexual intercourse. Although the victim claimed that she had accepted the money to hasten her departure from the defendant's apartment, he claimed that she had, in fact, demanded the money as payment for the sexual intercourse.

In *Demers v. State*, 209 Conn. 143, 159, 547 A.2d 28 (1988), we concluded that the victim's prior arrest for prostitution "could lead to a reasonable conclusion that the victim had agreed on at least one occasion in the past to perform sexual acts for money and that . . . [such a] conclusion would have been relevant to the issue of consent in the [defendants'] criminal trial." We also noted that "numerous courts of other jurisdictions [had] recognized the relevancy and admissibility of evidence tending to establish that the alleged victim of a sexual assault was a prostitute in cases where, as here, consent was a defense to the sexual acts." Id. Although *Demers* involved a challenge to the trial court's finding

of a *Brady-Agurs*[16] violation, we concluded that the suppressed evidence of the victim's prior prostitution would have been admissible under subdivision (4) of § 54-86f because it implicated the defendants' sixth amendment rights to confront the witnesses against them. Id., 160.

In the present case, as in *Demers*, the excluded evidence of the victim's prior prostitution deprived the jury of the necessary contextual framework to evaluate properly the defendant's version of events. Without such evidence, the jury was left to speculate as to why the defendant provided, and the victim accepted, the money that both agreed had been exchanged. Because the jury could have inferred, from the evidence presented, that the victim needed money from the fact that she had gone to the defendant's residence looking for work, it reasonably could have concluded that she accepted the money when it was offered because she needed money. Had the jury been allowed to consider the excluded evidence, however, it reasonably could have concluded, contrary to this explanation for why she accepted the money, that the victim accepted the money because she had performed an act of prostitution for which she expected payment. The evidence, therefore, was relevant to establish the victim's consent to the sexual intercourse, rather than her general unchaste character as prohibited by the rape shield statute. See H. Galvin, "Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade," 70 Minn. L. Rev. 763, 807 (1986).

---

[16] *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (suppression by prosecution of evidence favorable to accused who requested it violates due process when evidence is material either to guilt or to punishment, irrespective of good faith of prosecution); *United States* v. *Agurs*, 427 U.S. 97, 112, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976) (suppression by prosecution of evidence favorable to accused does not violate constitutional duty to disclose evidence favorable to defendant unless omission is sufficiently significant to result in denial of defendant's right to fair trial by creating reasonable doubt of guilt that did not otherwise exist).

Also, without evidence of the victim's prior history of prostitution, the jury heard no evidence to explain why she would have had a reason to fabricate a sexual assault allegation against the defendant. "[A]ny limitation on the impeachment of a key government witness is subject to the most rigorous appellate review." *State v. Colton*, supra, 227 Conn. 250. If the jury had been allowed to consider the excluded evidence, it reasonably could have found, contrary to the implication that she simply needed money, that the victim demanded a fee for her services as she had done in the past. Further, it could have found that, when the defendant paid only part of the fee, the victim insisted that he pay the balance, and that, when he refused to do so and indicated that he would not do so in the future, she decided to fabricate a charge of sexual assault. In this context, the jury could have inferred that when the victim stated, "I warned you," as she was leaving the apartment, she was warning the defendant about the consequences of failing to pay the additional $20, as opposed to his interpretation that she was warning him about the herpes.

Evidence suggesting a motive for a false allegation was relevant to the jury's assessment of the victim's credibility. Indeed, the prosecutor admitted as much in closing argument when he encouraged the jurors to ask themselves what motive the defendant and the victim would have to give false information. The prosecutor then went on to ask the jury, "What reason is there for [the victim] to give false information about what happened that morning?" The excluded evidence could have provided a reasonable answer to that question, but without it, the jury was left without any basis to impute to the victim a motive to testify falsely.

Having established that the excluded evidence was sufficiently relevant to the issue of consent, because it implicated both the victim's consent to the sexual

intercourse and her motive to testify falsely, that its exclusion could have violated the defendant's constitutional rights, we next must determine whether the evidence was so material to that issue that its exclusion did violate his constitutional rights. Subdivision (4) of § 54-86f requires that, to be admissible, evidence must be "so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." We conclude that evidence of the victim's prior history of prostitution and the defendant's knowledge of that history was sufficiently material to the issue of consent that its exclusion violated the defendant's constitutional rights. As a result, the evidence was admissible under § 54-86f (4). The trial court's evidentiary ruling was both improper and of constitutional magnitude, and that ruling requires reversal.

Although we have yet to define the term "material" in the context of § 54-86f (4), we are guided by the standard of materiality developed in *United States* v. *Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), and its progeny, including our own cases, in the context of prosecutorial suppression of evidence favorable to the defendant because those cases implicate the same constitutional rights contemplated by subdivision (4) of the statute. *Agurs* characterized material evidence as "creat[ing] a reasonable doubt [of guilt] that did not otherwise exist . . . ." Id., 112. The United States Supreme Court reformulated the standard in *United States* v. *Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. Because we have consistently used the *Bagley* formulation as the standard for

materiality in its constitutional sense; see *State* v. *Wilcox*, 254 Conn. 441, 453–54, 758 A.2d 824 (2000); *State* v. *Tomasko*, 242 Conn. 505, 518, 700 A.2d 28 (1997); *State* v. *Rasmussen*, 225 Conn. 55, 92, 621 A.2d 728 (1993); *State* v. *Shannon*, 212 Conn. 387, 399, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989); *State* v. *Pollitt*, 205 Conn. 132, 142–43, 531 A.2d 125 (1987); and because we conclude that § 54-86f (4) refers to materiality in its constitutional sense, evidence is material for purposes of § 54-86f (4) if, considering the case without the excluded evidence, there is a probability sufficient to undermine confidence in the guilty verdict.[17] We conclude that this standard is met in the present case.

First, the victim's testimony was the sine qua non of the state's case. Had the jury known of the victim's prior history of prostitution and the defendant's knowledge of that history, a reasonable probability exists that its verdict would have been affected. The state called no other witnesses to the incident at trial and introduced no physical evidence. In effect, the trial came down to a credibility contest between the victim and the defendant. Although the defendant was allowed to question the victim about whether she demanded money from him following sexual intercourse, the exclusion of the evidence that the victim had previously engaged in prostitution and that the defendant knew that she had previously engaged in prostitution prevented him from effectively presenting the defense of consent and developing her motive to make a false accusation, because

---

[17] Of necessity, we develop the standard of materiality for purposes of § 54-86f (4) in terms of an appellate standard, just as the standard of materiality, in a constitutional sense, was developed in *Agurs* and *Bagley*. We recognize, however, that the trial court must apply this standard in cases where the outcome has not yet been determined. Thus, the trial court must evaluate whether there is a probability that, if the evidence is excluded and the trial results in a guilty verdict, the evidentiary exclusion would undermine confidence in that verdict.

it denied the jury an opportunity to put the defendant's claims into context. The prosecutor conceded, at the close of the state's case and again during his closing argument, that the jury would have to credit the victim's testimony to convict the defendant.

Second, the state's case, which was wholly dependent on the victim's testimony, was very weak. The victim displayed an extraordinary lack of memory concerning important aspects of the incident. The victim could not remember whether she or the defendant removed her clothes, how long the defendant's penis was inside her vagina, whether she asked the defendant for money before the sexual assault, how much money the defendant gave her, whether she discussed the defendant giving her money, whether she asked the defendant for money after the sexual assault, or whether she went home or to the mall after the assault. The victim claimed that she could not remember these details because her aversion to alcohol was so strong that the alcohol on the defendant's breath caused her to "blackout." Yet, she was able to recall that the defendant helped her clean the semen off her stomach and that she went to the bathroom between the time of the sexual assault and the exchange of money. The victim also claimed that she could not remember prior testimony that she had given about the incident, indicating that even a review of the transcript of that testimony would not refresh her recollection. Permitting the introduction of evidence that could have provided the jury with additional reasons to question the victim's credibility may well have tipped the scales in the defendant's favor. Given the victim's anemic testimony and the centrality of her credibility to the state's case, there is a reasonable probability that, had the excluded evidence been admitted, the outcome of the case would have been different.

To be admissible under the rape shield statute, evidence must meet not only the requirements of one or

more of the individual subdivisions (1) through (4) of § 54-86f, but also must have probative value that outweighs its prejudicial effect on the victim. See footnote 9 of this opinion. We conclude that a trial court ruling that excludes evidence that was properly admissible under § 54-86f (4), however, requires reversal without the need for additional analysis of whether its probative value outweighs its prejudicial effect on the victim. This conclusion satisfies the objectives of the rape shield statute. "[R]ape-shield laws were meant to exclude irrelevant and prejudicial evidence that does nothing but taint the fact-finding process. Because the defendant has no constitutional right to introduce irrelevant, prejudicial evidence, and because the policies underlying rape-shield legislation will be served by rejecting only the irrelevant and outdated uses of sexual conduct evidence, the interests of both 'sides' are symmetrical and need not be 'balanced' in the constitutional sense." H. Galvin, supra, 70 Minn. L. Rev. 887. In other words, evidence cannot be excluded as more prejudicial to the victim than probative when that exclusion has already been determined to violate the defendant's constitutional rights.[18]

---

[18] We recognize that this holding presents an apparent conflict with statements made in *State* v. *Sullivan*, 244 Conn. 640, 649, 712 A.2d 919 (1998), about the trial court's ability to "exclude the evidence if its probative value is outweighed by such factors as time, confusion or prejudice," in the context of a § 54-86f (4) analysis. Because we concluded that the proffered testimony in *Sullivan* was not admissible under § 54-86f (4) in that it was irrelevant to the issues at trial, the language indicating that a balancing test was necessary, nonetheless, in a trial court ruling under § 54-86f (4), constitutes dicta. Although *State* v. *DeMatteo*, 186 Conn. 696, 702, 443 A.2d 915 (1982), which was cited in *Sullivan*, identified "situations where the potential prejudicial effect of relevant evidence would suggest its exclusion," the rape shield statute was not involved in that case. Further, in *Sullivan*, we indicated that a balancing test was appropriate where "the defendant succeeds in establishing the relevance of the [evidence]" without discussion of the requirement under § 54-86f (4) that the evidence also be material. *State* v. *Sullivan*, supra, 649. Evidence must have both characteristics, relevance *and* materiality, to be so critical that its exclusion could lead to a violation of the defendant's constitutional rights, thus making the balancing test

Accordingly, the evidence that the victim had engaged in prostitution and that the defendant knew that she had engaged in prostitution was so relevant and material to whether the sexual intercourse was consensual that it was admissible under § 54-86f (4), and the trial court's ruling excluding that evidence was improper. The improper exclusion of evidence admissible under § 54-86f (4) is, necessarily, of constitutional magnitude because the statutory subdivision defines the standard of admissibility in terms of the exclusion of the evidence resulting in a violation of the defendant's constitutional rights.

Normally, even when an evidentiary ruling has been determined to be both improper and of constitutional magnitude, the ruling will be reversed only if the state fails to prove beyond a reasonable doubt that the ruling was harmless to the defendant. *State* v. *Colton*, supra, 227 Conn. 253; *State* v. *Santiago*, 224 Conn. 325, 333, 618 A.2d 32 (1992). We conclude, however, that an evidentiary ruling that excludes evidence properly admissible under § 54-86f (4), contrary to evidence admissible under the other subdivisions of the statute, requires reversal with no additional evaluation of harm, because the establishment of materiality, in a constitutional sense, also establishes harm to the defendant. Thus, analysis of whether the state has proved beyond a reasonable doubt that the ruling was harmless to the defendant would only replicate the analysis already completed under the statute. Put another way, where a trial court ruling excludes evidence properly admissible under § 54-86f (4), implicit in the determination that the ruling was improper is the necessary conclusion that the judgment must be reversed.

unnecessary. To the extent that the dicta in *Sullivan* suggests that evidence can be so relevant and material that its exclusion would violate the defendant's constitutional rights, yet it can be excluded, nonetheless, based on a determination that its probative value fails to outweigh the prejudicial effect on the victim, we decline to follow it.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.