# STATE OF CONNECTICUT *v.* CHYWON WRIGHT
## (AC 33480)

Beach, Bear and Sheldon, Js.

732

Argued April 18—officially released August 6, 2013

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*,

state's attorney, and *David A. Gulick*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Chywon Wright, appeals from judgment of conviction, rendered after a jury trial, of two counts of aggravated sexual assault in the first degree in violation of General Statutes § 53a-70a (a) (4), and one count of conspiracy to commit aggravated sexual assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-70a (a) (4), conspiracy to commit kidnapping in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-92 (a) (2) (A), assault in the third degree in violation of General Statutes § 53a-61 (a) (1), and conspiracy to commit assault in the third degree in violation of §§ 53a-48 (a) and 53a-61 (a) (1). On appeal, the defendant claims that the trial court (1) improperly excluded evidence relevant to his defense of consent and the victim's[1] bias or motive to falsely accuse him and (2) violated the federal constitutional prohibition against double jeopardy by convicting him of three counts of conspiracy that arose out of a single unlawful agreement. We affirm in part and reverse in part the judgment of the trial court.

The following facts that reasonably could have been found by the jury and procedural history are relevant to the defendant's claims on appeal. On November 1, 2008, the victim accompanied Bryan Fuller, a member of a street gang, to a vacant second floor apartment at 19 Taylor Street in Waterbury. The victim went to the apartment expecting Fuller to pay her $250. Fuller's fellow gang members, including the defendant, were present at the apartment. Inside the apartment, several of the gang members, including the defendant, took

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

turns openhandedly hitting the victim on her breasts, buttocks and vagina, and engaged in oral intercourse with the victim for approximately one half hour.

The victim was then moved to a second room. In this room, the defendant engaged in oral intercourse with the victim and vaginally penetrated the victim while wearing a black plastic convenience store bag on his penis. Also, in that room, several of the defendant's fellow gang members engaged in oral, vaginal and anal intercourse with the victim. These events lasted for approximately one and one-half hours. Eventually, the victim left the apartment, wearing her clothes but leaving her shoes, cell phone and purse behind. Shortly thereafter, the victim went to Saint Mary's Hospital in Waterbury, where she reported the sexual assault and the medical staff performed a sexual assault evidence collection kit on her.

Subsequently, the defendant was arrested and charged with two counts of aggravated sexual assault in the first degree in violation of § 53a-70a (a) (4), and one count of conspiracy to commit aggravated sexual assault in the first degree in violation of §§ 53a-48 (a) and 53a-70a (a) (4), kidnapping in the first degree in violation of § 53a-92 (a) (2) (A), conspiracy to commit kidnapping in the first degree in violation of §§ 53a-48 (a) and 53a-92 (a) (2) (A), assault in the third degree in violation of § 53a-61 (a) (1), and conspiracy to commit assault in the third degree in violation of §§ 53a-48 (a) and 53a-61 (a) (1).

On December 30, 2010, the prosecutor filed a motion in limine to preclude the defendant from offering evidence at trial of other sexual assaults upon the victim and other complaints of sexual assault by her unless the defendant showed via an offer of proof that the evidence fell within an enumerated exception under General Statutes § 54-86f, known as the rape shield

statute.[2] The defendant's trial commenced on January 11, 2011, when the court, inter alia, held a hearing pursuant to § 54-86f for the purpose of allowing defense counsel to demonstrate how the evidence he intended to proffer at trial was relevant to a critical issue in the case—either, the victim's alleged consent to engage in sexual relations with him, or the defendant's alleged belief that the victim consented to having sexual relations with him and the reasonableness of that belief. The trial ended on January 20, 2011, at which time the jury returned a verdict of guilty on all of the charges against the defendant, except for kidnapping in the first degree on which he was acquitted. The court eventually sentenced the defendant on those charges to a total effective term of twenty years of incarceration and ten years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, the defendant claims that the court violated his constitutional rights to confront his accuser and to present a defense in violation of his constitutional rights pursuant to § 54-86f (4).[3] Specifically, the

[2] The state's motion in limine provides: "Pursuant to Connecticut Practice Book § 42-15 and to Connecticut General Statute[s] § 54-86f, the state moves that the defendant be precluded from offering evidence of other sexual conduct or sexual assault complaints of the complaining witness in the above case, unless he shows via an offer of proof that his evidence falls within an enumerated exception under Connecticut General Statute[s] § 54-86f."

[3] General Statutes § 54-86f provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of

defendant argues that the court "denied the defendant his opportunity to defend himself by refusing to allow the defendant to introduce evidence that [the victim] was a prostitute and had just had consensual oral sex with codefendant Bryan Fuller and his friend for the promise of payment of $250 shortly before the Taylor Street acts. This evidence was highly relevant to his defense that [the victim] had consensual sex with him and expected to get paid for it, that she got mad at [certain] acts and Fuller's refusal to pay her for services [at] both [the] Wolcott [Street] and Taylor [Street locations], and she fabricated the charges of rape as a means of getting even with the guys. Once the court precluded the defendant from introducing this evidence, the jury had no way of knowing why [the victim] might have consented in this case, or that she would have a motive to fabricate a claim of rape." The defendant further argues that "[t]he evidence that [the victim] was a prostitute, had just had sex with a codefendant for the promise of $250 and expressed a willingness to have sex with several men for $500 taken together with her behavior supported that she consented and rendered it more probable that the defendant reasonably believed she had consented or she in fact did consent and only went to the police because she was not paid for her services [at the] Wolcott [Street] and . . . Taylor [Street locations]."[4] We are not persuaded.

---

proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

[4] During the § 54-86f hearing, defense counsel did not argue that the victim's bias or motive to fabricate the sexual assault claim against the defendant constituted a critical issue in the trial, nor did defense counsel attempt

"Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . .

to make a proffer that evidence he sought to introduce was relevant to show the victim's bias or motive to fabricate the sexual assault claim against him.

On appeal, the defendant requests that we review this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis omitted; footnote omitted.) Id.

We now turn to the third prong of *Golding* to determine whether "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." Id., 241. The defendant claims that by precluding him from introducing evidence "that [the victim] was a prostitute and had just had consensual oral sex with codefendant Bryan Fuller and his friend for the promise of payment of $250 shortly before the Taylor Street acts," the court prevented him from presenting evidence to the jury regarding the victim's bias or motive to fabricate the sexual assault claims against the defendant.

As discussed in this opinion, however, the court allowed the defendant to inquire into these issues after the defendant established that there was a question of consent by the victim. See part I of this opinion. Although the defendant was permitted to present this evidence with respect to another issue in the trial, the jury could consider this evidence without limitation with respect to all issues raised by the defendant, including the victim's bias or motive to fabricate the sexual assault claims against him. Thus, the record demonstrates that the court allowed the defendant to introduce the evidence that he claims that he was precluded from introducing to the jury. Absent factual support for his claims, he cannot establish any violation of his constitutional rights. Accordingly, the defendant has not shown that a

"The rape shield statute excludes evidence of prior sexual conduct of the victim of a sexual assault, unless one of the statutory exceptions is satisfied. . . . The statute was enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material. . . . Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her from undue harassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. . . . Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters. . . .

"Although the state's interests in limiting the admissibility of this type of evidence are substantial, they cannot by themselves outweigh the defendant's competing constitutional interests. . . . The determination of whether the state's interests in excluding evidence must yield to those interests of the defendant is determined by the facts and circumstances of the particular case. . . .

"[T]he right to confront and cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . Such an interest includes the trial court's right, indeed, duty, to exclude irrelevant evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Adorno*, 121 Conn. App. 534, 543–44, 996 A.2d 746, cert. denied, 297 Conn. 929, 998 A.2d 1196 (2010).

"The primary interest secured by confrontation is the right to cross-examination . . . . As an appropriate

constitutional violation clearly exists, and his claim of constitutional error fails under the third prong of *Golding*.

and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted. . . . Compliance with the constitutionally guaranteed right to cross-examination requires that the defendant be allowed to present the jury with facts from which it could appropriately draw inferences relating to the witness' reliability. . . . [P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the sixth amendment [to the United States constitution]. . . . Further, the exclusion of defense evidence may deprive the defendant of his constitutional right to present a defense. . . . Not every ruling that prevents the defendant from introducing evidence, however, rises to the level of a violation of his constitutional rights. . . . The defendant's right to confront witnesses against him is not absolute, but must bow to other legitimate interests in the criminal trial process." (Citations omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 270 Conn. 826, 835–36, 856 A.2d 345 (2004).

Section 54-86f provides in relevant part: "In any prosecution for sexual assault under [section] . . . 53a-70a . . . no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. . . ."[5]

"In a prosecution for sexual assault, § 54-86f sets forth the appropriate factors for consideration in determining the admissibility of evidence of the victim's sexual conduct. . . . The rape shield statute excludes evidence of an alleged victim's prior sexual conduct, with limited exceptions, for policy reasons. . . .

---

[5] See footnote 3 of this opinion.

Although the state has a substantial interest in promoting these goals, subdivision (4) of § 54-86f codifies the constitutional mandate that the state's interest must yield to that of the defendant where the proffered evidence is so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Because the primary issue in the present case was whether the sexual intercourse was consensual, any evidence that was so relevant and material to the issue of consent that excluding it would have violated the defendant's constitutional rights was admissible under § 54-86f (4). Determining whether evidence is relevant and material to critical issues in a case is an inherently factbound inquiry. Relevance depends on the issues that must be resolved at trial, not on the particular crime charged. . . . Consequently, the determination of whether the state's interest in excluding evidence under the rape shield statute must yield to the defendant's sixth amendment rights to confront the witnesses against him and to present a defense depends on the facts and circumstances of the particular case." (Citations omitted; internal quotation marks omitted.) *State* v. *DeJesus*, supra, 270 Conn. 836–37.

"As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either more certain or more probable. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Citation omitted; internal quotation marks omitted.) Id., 838. "A clear statement of the defendant's theory of relevance is all important in determining whether the evidence is offered for a permissible purpose." (Internal

quotation marks omitted.) *State* v. *Rolon,* 257 Conn. 156, 179, 777 A.2d 604 (2001).

"[E]vidence is material for purposes of § 54-86f (4) if, considering the case without the excluded evidence, there is a probability [that the result of the proceeding would have been different] sufficient to undermine confidence in the guilty verdict." *State* v. *DeJesus,* supra, 270 Conn. 842.

"[A]n evidentiary ruling that excludes evidence properly admissible under § 54-86f (4), contrary to evidence admissible under the other subdivisions of the statute, requires reversal with no additional evaluation of harm, because the establishment of materiality, in a constitutional sense, also establishes harm to the defendant. Thus, analysis of whether the state has proved beyond a reasonable doubt that the ruling was harmless to the defendant would only replicate the analysis already completed under the statute. Put another way, where a trial court ruling excludes evidence properly admissible under § 54-86f (4), implicit in the determination that the ruling was improper is the necessary conclusion that the judgment must be reversed." Id., 845.

On the first day of trial, the court held a hearing pursuant to § 54-86f for the purpose of allowing defense counsel to proffer evidence demonstrating how the evidence he sought to elicit at trial was relevant to a critical issue in the case—either the victim's consent to have sex with the defendant or his alleged belief that the victim consented to have sex with him and the reasonableness of that belief.[6] Defense counsel argued that the victim's prior agreements to exchange sex for money with his fellow gang members were relevant because the agreements were part of one large transaction of prostitution and the large transaction involved the victim's having agreed with a codefendant to have

---

[6] See footnote 2 of this opinion.

sex with several men, including the defendant, at the Taylor Street location for $500. After the hearing concluded, the court held that the defendant had not proffered evidence sufficient to raise the question of consent and, therefore, it precluded the defendant from presenting evidence on that issue during his cross-examination of the victim in the state's case-in-chief. The court further ruled that he could offer evidence in his case-in-chief on the issue of consent, at which time the court would determine if that evidence was adequate to establish consent.

The following additional facts are relevant to the disposition of this claim. At trial, defense counsel made several attempts to ask the victim and other witnesses questions regarding the victim's alleged status as a prostitute, whether she offered a codefendant that she would engage in sexual acts with four men for $500 and whether she had had consensual sex with a codefendant and another man for $250 shortly before the sexual conduct that occurred in this case. As it had previously ruled, the court precluded defense counsel from asking questions on cross-examination of the victim during the state's case-in-chief pertaining to those evidentiary issues on the ground that such questions were prohibited under the rape shield statute, § 54-86f. The court, however, permitted the defendant to offer such evidence in his case-in-chief.

On January 13, 2011, however, the prosecutor called Sergeant Michael Slavin of the Waterbury Police Department as a witness, through whom the prosecutor introduced into evidence the defendant's written statement. On January 14, 2011, the court read a portion of the defendant's statement into the record, stated that it had been admitted as a full exhibit and ruled that the defendant at that point had sufficiently raised the issue of consent.[7]

---

[7] The court stated: "State's exhibit 47, which is now a full exhibit, has a statement which I'll read into the record. Quote: Then Bryan grabbed me

The defendant first challenges the court's application of § 54-86f (4) by arguing that the court precluded him from introducing "evidence that [the victim] was a prostitute . . . ." The defendant, however, also argues to the contrary that "[e]vidence was presented before the jury that supported a reasonable inference that the defendant knew [the victim] was a prostitute and that she was going over to Taylor Street to have consensual sex for the payment of money even though Fuller had no intention of paying [her]." Our review of the record leads us to conclude that there was in fact evidence before the jury, which reasonably could have supported findings, if the jury had chosen to make them, that the defendant knew that the victim was a prostitute and believed that she was going to the Taylor Street location to have consensual sex for money. Therefore, the defendant's claim that he was prevented from establishing that the victim was a prostitute is without foundation.

Insofar as the defendant challenges the court's application of § 54-86f (4) to prohibit him from using the

aside and said that he told this girl, that would be [the victim], that he was give her some money because he was with her all day, she was giving him and the other boy head all day, giving head means getting oral sex. I heard Bryan tell this girl that the money he owes her is upstairs on the second floor but I knew he was lying to her because he told me that and I also know that the second floor is a vacant apartment.

"In my opinion, that has now, that statement which is now a full exhibit, and that portion of the statement has established, even though it's very thin, has established the question of consent.

"Therefore, I'm going to allow the defendant to, because I think—because I think at this point, the narrow reading of § 54-86f could result in the defendant here not being able to present a defense to this jury. . . .

"Counsel can inquire as to the basis of the defendant's knowledge of the prior sexual conduct of [the victim]. There were several questions that I excluded because at that point, before his statement came in, there was no evidence to support the question of—it was—there was no reason not to apply § 54-86f.

"Now, we have a statement, which, in my opinion, requires me to more narrowly view § 54-86f in terms of the statement and in terms of the language set forth in *Demers* v. [*State*], 209 Conn. 143, [547 A.2d 28 (1988)], and *State* v. *DeJesus*, [supra] 270 Conn. 826."

term "prostitute," we recognize that the term prostitute describes a person who performs sexual acts for money or other consideration, including those acts which the defendant claims that the victim performed in this case. The evidence before the jury, if believed, reasonably could have supported a finding that the victim had agreed to and did perform sexual acts in the expectation of being paid. Although the court did not permit the victim to be called a prostitute, whether she was in fact a prostitute reasonably was a question of fact for the jury to decide on the basis of the evidence. The defendant presented evidence to the jury that, if believed by the jury, demonstrated that the victim exchanged sex for money. The court's prohibition of the use of the conclusory term prostitute thus had no bearing on the outcome of the trial because the jury heard evidence from which it reasonably could have found that the victim was indeed a prostitute. The defendant concedes this point in his brief, when he states that "[e]vidence was presented before the jury that supported a reasonable inference that the defendant knew [the victim] was a prostitute and that she was going over to Taylor Street to have consensual sex for the payment of money . . . ." We conclude that the court did not preclude the defendant from introducing evidence to the jury that the victim was a prostitute, despite its ruling that the defendant could not label her a prostitute.

The defendant also challenges the court's application of § 54-86f (4) to preclude him from introducing evidence that the victim "had just had sex with a codefendant for the promise of $250" and precluded him from introducing evidence that the victim had "expressed a willingness to have sex with several men for $500 . . . ." The defendant's claims are not persuasive. The record demonstrates that although the court initially precluded the defendant from presenting evidence as to the victim's prior sexual conduct, it later allowed

the defendant to present such evidence to the jury.[8] The defendant does not point to any specific instances in which he was precluded from pursuing questions regarding the victim's prior sexual conduct or an expression of her willingness to have sex with several men for $500 after he sufficiently had raised the question of consent. We conclude that the court properly exercised its discretion with respect to its evidentiary rulings challenged by the defendant.

## II

The defendant next claims that the court violated the double jeopardy clause of the United States constitution by sentencing him on three counts of conspiracy on the basis of a single agreement with multiple criminal objectives.

"A defendant's double jeopardy claim presents a question of law, over which our review is plenary. . . . The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause [applies] to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . .

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same

---

[8] For example, the record demonstrates that the court allowed the defendant to present evidence that the victim had sex with a codefendant for a promise of $250 prior to arriving at Taylor Street. The record also demonstrates that the court allowed the defendant to ask the victim whether she had had an arrangement to sexually service four individuals for $500, and the court allowed the victim to respond.

offense. Multiple punishments are forbidden only if both conditions are met." (Citation omitted; internal quotation marks omitted.) *State* v. *Gonzalez*, 302 Conn. 287, 315, 25 A.3d 648 (2011).

"Where a defendant is convicted of [multiple] counts of conspiracy that arise from the same agreement, resulting in [multiple] sentences, the defendant's rights under the double jeopardy clause have been violated." *State* v. *Lee*, 138 Conn. App. 420, 448, 52 A.3d 736 (2012). "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation, only the single penalty prescribed by the statute can be imposed." (Internal quotation marks omitted.) Id., 449.

Section 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." General Statutes § 53a-51 provides: "Attempt and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or is an object of the conspiracy, except that an attempt or conspiracy to commit a class A felony is a class B felony."

The information charging the defendant with, inter alia, the three conspiracies alleged that the conspiracies arose out of the same underlying factual scenario in that the agreements were entered into on the same date, at the same time and in the same location. "[O]n or

about November 1, 2008, at or near 19 Taylor Street Second Floor, Waterbury, CT, at or about 7:00 p.m., the [defendant], with intent that conduct . . . be performed . . . agree[d] with one or more persons to engage in or cause the performance of such conduct, and any one of them commit[ted] an overt act in pursuance of such conspiracy."[9] The state concedes "that the defendant's convictions and sentences for kidnapping, sexual assault and assault are supported by evidence of a single agreement to sexually assault the victim." In essence, the state charged the defendant with having entered into one unlawful agreement to accomplish three criminal purposes. Accordingly, we conclude that the defendant's multiple sentences for three separate conspiracies arising out of a single unlawful agreement are unlawful and cannot stand.

Although the parties agree that a double jeopardy violation has occurred, they disagree about what the

[9] Count three of the substitute information, which charged the defendant with conspiracy to commit aggravated sexual assault in the first degree, alleged "that on or about November 1, 2008, at or near 19 Taylor Street Second Floor, Waterbury, CT, at or about 7:00 p.m., the [defendant], with intent that conduct constituting the crime of Aggravated Sexual Assault In The First Degree be performed . . . agree[d] with one or more persons to engage in or cause the performance of such conduct, and any one of them commit[ted] an overt act in pursuance of such conspiracy."

Count five of the substitute information, which charged the defendant with conspiracy to commit kidnapping in the first degree, alleged "that on or about November 1, 2008, at or near 19 Taylor Street Second Floor, Waterbury, CT, at or about 7:00 p.m., the [defendant], with intent that conduct constituting the crime of Kidnapping In The First Degree be performed . . . agree[d] with one or more persons to engage in or cause the performance of such conduct, and any one of them commit[ted] an overt act in pursuance of such conspiracy."

Count seven of the substitute information, which charged the defendant with conspiracy to commit assault in the third degree, alleged "that on or about November 1, 2008, at or near 19 Taylor Street Second Floor, Waterbury, CT, at or about 7:00 p.m., the [defendant], with intent that conduct constituting the crime of Assault in The Third Degree be performed . . . agree[d] with one or more persons to engage in or cause the performance of such conduct, and any one of them commit[ted] an overt act in pursuance of such conspiracy."

appropriate order of remand should be to remedy this violation. The defendant argues that the conviction of conspiracy to commit assault in the third degree and conspiracy to commit kidnapping in the first degree should be vacated and dismissed, and that he should be sentenced only for the conviction of conspiracy to commit aggravated sexual assault.[10] The state argues that "the judgments as to the three conspiracy counts must be set aside and remanded to the trial court with direction to combine the defendant's three conspiracy convictions and to vacate the sentences for two of the conspiracy convictions." (Internal quotation marks omitted.) The appropriate remedy for such a constitutional violation, pursuant to *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013),[11] is to reverse the judgment of conviction of conspiracy to commit aggravated sexual assault in the first degree, conspiracy to commit kidnapping in the first degree and conspiracy to commit assault in the third degree, and to remand the case to the trial court with direction to render judgment on one count of conspiracy as explained in *Polanco* and to resentence the defendant accordingly.[12]

---

[10] The defendant also requests that the conviction on all three counts be vacated and a new trial ordered. He has not identified any legal basis, however, upon which this relief may be granted.

[11] We take guidance from our Supreme Court in *Polanco*, in which it held that "when a defendant has been convicted of greater and lesser included offenses, the trial court must vacate the conviction for the lesser offense rather than merging the convictions . . . . *State* v. *Polanco*, supra, 308 Conn. 245. Our Supreme Court further stated: "While we are aware of no reason why our holding, of logical necessity, would not apply with equal force to other scenarios in which cumulative convictions violate the double jeopardy clause, we must limit our discussion to the specific context that arises in the present case and as briefed by the parties." Id., 249 n.3.

[12] The defendant argued at oral argument to this court that the appropriate remedy includes resentencing him on the basis of the aggregate package theory. "Pursuant to [the aggregate package] theory, we must vacate a sentence in its entirety when we invalidate any part of the total sentence. On remand, the resentencing court may reconstruct the sentencing package or, alternatively, leave the sentence for the remaining valid conviction or convictions intact." (Internal quotation marks omitted.) *State* v. *LaFleur*, 307 Conn. 115, 164, 51 A.3d 1048 (2012). The defendant, however, did not

The judgment is reversed only with respect to the conviction of three counts of conspiracy and the case is remanded with direction to vacate the judgment as to two of the conspiracy counts, and to render judgment on one count of conspiracy and to resentence the defendant thereon; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

brief this issue in his appellate brief. Accordingly, we decline to address this issue. See *Daniels* v. *Warden*, 28 Conn. App. 64, 65 n.1, 609 A.2d 1052, cert. denied, 223 Conn. 924, 614 A.2d 820 (1992); Practice Book § 60-5.