******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KARON GODBOLT
(AC 36857)

Gruendel, Alvord and Mullins, Js.

*Argued September 11—officially released November 17, 2015*

(Appeal from Superior Court, judicial district of
Litchfield, Ginocchio, J.)

*Elizabeth Knight Adams*, for the appellant
(defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, was *David S. Shepack*,
state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Karon Godbolt, appeals from the judgment of conviction, rendered after a jury trial, of three counts of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), (2), and (3); one count of harassment in the second degree in violation of General Statutes § 53a-183 (a) (3); one count of carrying a dangerous weapon in violation of General Statutes § 53-206; one count of disorderly conduct in violation of General Statutes § 53a-182 (a) (1); and one count of possession of drug paraphernalia in violation of General Statutes § 21a-267 (a). On appeal, the defendant claims that the trial court abused its discretion and denied him his sixth amendment and state constitutional rights to present a complete defense by failing to permit him a continuance so that he could secure the attendance of an out-of-state alibi witness. We affirm the judgment of the trial court.

The facts underlying this appeal arise out of the defendant's July, 2013 jury trial for conduct that occurred between May 19 and 21, 2012. At trial, the defendant's former girlfriend, Jessica Siddell, testified that on May 20, 2012, at approximately 3 a.m., she awoke in her Torrington apartment to the defendant tapping her on the forehead with the blunt side of a knife. Taking the stand in his own defense, the defendant testified that at that time he was instead with Shelly Romano at her mother's home in Winsted.

The defendant had been arrested on May 21, 2012, for the incident with Siddell and related events. On June 22, 2012, the state filed a demand for notice of alibi defense. More than one year later, the defendant filed a notice of alibi defense dated July 8, 2013, wherein he indicated that he would rely on Romano, who was living in Owensborough, Kentucky, as an alibi witness.

Jury selection began on July 10, 2013. On July 11, at the conclusion of jury selection, the court told counsel to have their witnesses ready to testify on July 17 and that it would not allow the trial to be delayed because of their failure to do so. The state indicated that its case-in-chief likely would conclude on the second day of trial. After confirming with defense counsel that Romano would be traveling from Kentucky to testify, the court ended by stating that "I don't want to hear that [she's] stuck in a—some type of a car breakdown on the 17th, [or that she] can't be up here until Friday. I'm not going to accept excuses . . . because you all have been given plenty of time to prepare for this case."

The trial began as scheduled on Wednesday, July 17, 2013. The state called several witnesses but did not conclude its case-in-chief on that day. The next morning, the court began the proceedings by asking defense counsel "to report in on witnesses." Defense counsel responded that he had spoken to Romano the night

before and was doubtful that she could testify before the following Monday because she was still in Kentucky and had not yet boarded a bus to Connecticut. Defense counsel explained that if Romano boarded a bus that morning, a Thursday, she would not arrive until Friday afternoon. Defense counsel admitted, however, that Romano had not yet boarded any bus, and, moreover, that she did not even have the necessary bus fare to do so.[1]

The court inquired into the state's position on the defendant's suggestion of a continuance given that Romano could not testify until possibly Monday, July 22, 2013. In response, the state drew the court's attention to the July 11 discussion regarding the attendance of witnesses, the fact that the trial date in this case had been set some time ago, and the failure of defense counsel to subpoena Romano, who, in this case, was known to have been living out of state for some time prior to the start of trial.[2]

After hearing from both parties regarding the potential continuance, the trial court stated: "I'm more than likely not going to continue the case because [Romano's] reasoning for not being here is vague. And there's really no concrete explanation as to why she's not here today or tomorrow. I was going to give her [until] tomorrow. And [defense counsel is] telling me she won't be here tomorrow." Then, after noting that the evidentiary portion of the trial was likely to conclude that day and the charging conference could take place as soon as that afternoon, the court concluded: "Unless you tell me that she'll be here tomorrow I will not continue the case until next week for her to be here because of the explanation that's been put on the record." Defense counsel responded that he would telephone Romano during the break to ascertain her expected arrival time.

Later that day, before the lunch recess, defense counsel again indicated that he planned to telephone Romano. The court responded: "You tell her, if she's here tomorrow morning, and even if you're done with your case today, there's a good chance this court would allow her to testify in the morning. . . . I'm not going into next week. . . . Because I did give everybody notice that this case was going to be tried on these dates. . . . Defense counsel really has not offered any excuse as to why a witness who he felt was willing to come in and testify on behalf of the defendant, who has known about the case for a substantial period of time, has made no reasonable showing as to why she can't be here, other than cryptic and vague messages that it's not the right time, she doesn't have the money; it doesn't convince the court to grant a continuance past tomorrow with regard to that witness."

Defense counsel never reported back to the court regarding what he had learned from his phone call to

Romano concerning her possible attendance at the trial. Instead, after the lunch recess, the defendant began presenting his case-in-chief and took the witness stand in his own defense. After he testified, the court inquired whether the defense had any more witnesses. Defense counsel responded "no," and the defendant then rested his case without any mention of Romano. Romano did not testify at the trial.

On Tuesday, July 23, 2013, counsel presented closing arguments and the jury began its deliberations. On July 24, 2013, the jury returned a guilty verdict, and the court thereafter rendered a judgment of conviction and imposed a sentence of twenty years imprisonment, execution suspended after twelve years, and five years of probation. This appeal followed.

The defendant claims on appeal that the trial court denied him his right to present a complete defense when it did not grant him a two day continuance to secure Romano's attendance at trial as an alibi witness. Specifically, he argues that the trial court's denial of a continuance was an abuse of discretion because it arbitrarily elevated the orderly administration of the trial over his sixth amendment right to present a complete defense.

In response, the state argues that the defendant waived this issue at trial by (1) failing to subpoena Romano, (2) failing to make a timely motion for a continuance, and (3) acquiescing when the court indicated that in the absence of a valid reason for doing so, it would not continue the trial indefinitely. Alternatively, the state argues that the court reasonably exercised its discretion when it declined to continue the trial for an indefinite period of time. We agree with the state's alternative argument.[3]

We first set forth our standard of review and the relevant legal principles.[4] "The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . .

"A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis. . . .

"Among the factors that may enter into the court's

exercise of discretion in considering a request for a continuance are the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; the defendant's personal responsibility for the timing of the request; [and] the likelihood that the denial would substantially impair the defendant's ability to defend himself . . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial. . . .

"Lastly, we emphasize that an appellate court should limit its assessment of the reasonableness of the trial court's exercise of its discretion to a consideration of those factors, on the record, that were presented to the trial court, or of which that court was aware, at the time of its ruling on the motion for a continuance." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Davis*, 135 Conn. App. 385, 393–94, 42 A.3d 446, cert. denied, 305 Conn. 916, 46 A.3d 171 (2012).

In light of the information available to the court when it considered the defendant's proffered reasons for prolonging the trial to secure Romano's attendance, we conclude that it did not abuse its discretion when it declined to grant the defendant a continuance. The trial court properly considered the timing of the defendant's request, the unspecified length of the requested delay, and the defendant's role in necessitating the delay.

First, the trial court properly took into account the timing of the defendant's request. The defendant did not intimate that he would have any problems securing Romano's presence at trial until after the trial already had commenced. As we already have noted, we hesitate to conclude that a trial court abused its discretion by denying a motion for continuance made when trial was already underway. See id., 394. "The trial court has the responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interference with the fair administration of justice. . . . Once a trial has begun . . . a defendant's right to due process . . . [does not entitle] him to a continuance upon demand." (Citation omitted; internal quotation marks omitted.) *State* v. *Stevenson*, 53 Conn. App. 551, 562, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999).

In the present case, the trial court was free to consider that the defendant did not raise the possibility of continuing the trial until the state was nearing the end of its case-in-chief. Indeed, in light of the late hour of the request and the defendant's failure to utilize available procedures for securing Romano's attendance, i.e., issuing a subpoena for Romano, the court reasonably could

have concluded that the defendant's continuance request was untimely. See *State* v. *Cecil J.*, 99 Conn. App. 274, 292–93, 913 A.2d 505 (2007) ("for purposes of examining the timeliness of [the] motion [for a continuance], the defendant . . . had months in which to seek judicial orders that would permit him to question witnesses who might otherwise be unavailable to testify"), aff'd, 291 Conn. 813, 970 A.2d 710 (2009).

Second, the trial court properly considered the unspecified length of the potential delay. "Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system. . . . Judges must be firm and create the expectation that a case will go forward on the specific day that it is assigned." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 53 Conn. App., 563–64. It is, therefore, within the trial court's discretion to deny a continuance when the length of the delay sought is unspecified. See id., 563 (affirming denial of continuance to subpoena out-of-state witness where defendant failed to specify probable length of delay and could not assure trial court that he would be successful in obtaining witness' attendance).

Here, although the defendant claims on appeal that he sought only a "two day" continuance, the actual length of the continuance was never made clear to the trial court.[5] In the discussion on the morning of Thursday, July 18, 2013, defense counsel indicated that if Romano boarded a bus that morning, she would arrive in Connecticut on Friday afternoon and could testify on the following Monday. This was not a request to continue the trial until Monday. In fact, later on in the discussion, defense counsel conceded that Romano had not yet procured bus fare, let alone boarded the necessary bus.

Moreover, although the trial court permitted the defendant to find out during the lunch recess when Romano might be available, the record is devoid of any indication that he did so. In other words, the defendant gave the trial court no assurances that Romano ever would have bus fare or ever would board a bus and travel to Connecticut. Thus, on this record, the defendant never presented the court with a specific time frame for the continuance. Accordingly, the court properly factored the uncertain length of the requested delay into its denial of a continuance.

Third, the trial court properly considered the defendant's responsibility for the requested delay and the vagueness of the explanation offered for Romano's absence. "If the criminal defendant requests a continuance to await the return of an absent witness, he bears the burden of providing a good faith justification for such a continuance." *State* v. *Gordon*, 197 Conn. 413, 424B, 504 A.2d 1020 (1985) (affirming denial of continuance where motion was made close to conclusion of

state's case and there was no representation as to when defense counsel expected missing witness to become available).

The defendant had known at least since July 8, 2013, the date that he filed his notice of alibi defense, that Romano would be traveling from Kentucky to testify. Nevertheless, not until ten days later, on the day the testimony was likely to conclude, did he seek a delay. Moreover, at the time he requested the delay, he offered no explanation as to why an attempt to procure bus fare for Romano had been made only the night before. Nor did he indicate what, if any, attempts he had made to secure her attendance at trial in the week since the trial court's direction to counsel to have witnesses ready by July 17. Thus, the trial court properly considered this lack of justification for Romano's absence when declining to grant the defendant a continuance. Because the defendant had adequate notice that trial was approaching and still waited until the last possible moment to alert the court to Romano's alleged difficulties in procuring transportation to Connecticut, the court's decision not to grant an eleventh hour continuance was not an abuse of discretion. See *State* v. *Brunetti*, 279 Conn. 39, 81–82, 901 A.2d 1 (2006) (affirming denial of request for continuance where defense counsel knew that individual was likely to be defense witness but made no attempt to locate witness until trial was nearly over), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

On the basis of our review of the foregoing factors and the circumstances of this case, we conclude that the trial court's decision not to grant the defendant a continuance was neither arbitrary nor unreasonable, and, therefore, the court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The following colloquy took place between the trial court and defense counsel:

"The Court: [H]as anybody inquired as to what a bus ticket from Kentucky to Bridgeport or New York City would cost?

"[Defense Counsel]: It's approximately $380.

"The Court: And no one has made any attempt to get that money to her or she's made no attempt to raise the money herself?

"[Defense Counsel]: She's asked to borrow the money, as I understand the public defender system I can—I've told her I can get her reimbursed once I have the receipt and the ticket.

"The Court: Has your client or his family made any attempt to try to get her up here and pay for the bus fee?

"[The Defendant]: Last night.

"The Court: I'll let you speak on his behalf. I don't think he should have to address it.

"[Defense Counsel]: Okay. As I understand it, they tried last night.

"The Court: Tried—

"[Defense Counsel]: Now I haven't spoken to them.

"The Court: —what last night?

"[Defense Counsel]: To contact her. And then I got an e-mail this morning from a family member saying that [Romano] couldn't be here . . . before Monday.

"The Court: And why couldn't she be here before Monday?

"[Defense Counsel]: Because of the bus schedule, by the time the bus

leaves, if she left this morning she could be here some[time] tomorrow afternoon.

"The Court: So, did she eventually come up with the money, is there somehow she did now come up with the money for the bus fare?

"[Defense Counsel]: I—I don't know why she didn't come up with the money for bus fare, Your Honor.

"The Court: But, does she have the money for bus fare now?

"[Defense Counsel]: I don't know.

"The Court: So, is it a matter of just to schedule the bus or she doesn't have the money?

"[Defense Counsel]: She doesn't have the money.

"The Court: So, is there any reason to believe she'll have the money Friday night, Saturday night, or Sunday night?

"[Defense Counsel]: When [the defendant's] family is here I can inquire. They're coming today."

[2] At no point during the proceedings did the defendant ever subpoena Romano. See General Statutes § 54-82i (c).

[3] "[W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice. . . . In determining waiver, the conduct of the parties is of great importance. . . . [W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . . Thus, [w]aiver . . . involves the idea of assent . . . ." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Santiago*, 142 Conn. App. 582, 595, 64 A.3d 832, cert. denied, 309 Conn. 911, 69 A.3d 307 (2013).

We note that although the defendant did not make a specific, timely written or oral motion for a continuance, the July 18, 2013 discussion between the court and the parties regarding Romano and her attendance at the trial clearly demonstrated to the court that defense counsel was seeking to continue the trial to a point when Romano could come to court to testify and the state was objecting to such a continuance. See *State* v. *Victor C.*, 145 Conn. App. 54, 70, 75 A.3d 48 (assuming arguendo that single sentence in which defense counsel sought delay was sufficient to constitute request for continuance), cert. denied, 310 Conn. 933, 78 A.3d 859 (2013). Further, we do not infer that he voluntarily abandoned his request for a continuance by failing to subpoena Romano and to object when the court indicated that it would not continue the trial indefinitely without a valid reason to do so, particularly because the record shows that defense counsel proffered reasons why the court should continue the case. See *State* v. *Nelson*, 118 Conn. App. 831, 841 n.3, 986 A.2d 311 (rejecting argument that defendant's affirmative representation that he was ready to proceed, made after court indicated that it would not grant requested continuance, constituted waiver), cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010).

In any event, even though the defendant's continuance request was less than clear, we will review his claim on appeal because the minimal requirements for review are met and the defendant cannot prevail on his claim. See *In re Shane M.*, 318 Conn. 569, 585 n.14, A.3d (2015). In reviewing the claim, we note that the grounds that the state asserts in support of its waiver argument are pertinent to our conclusion that the trial court properly exercised its discretion in declining to grant a continuance.

[4] Although the defendant couches his claim on appeal in terms of a denial of his constitutional right to present a complete defense, we will review the trial court's refusal to grant a continuance for an abuse of discretion. "Even if the denial of a motion for a continuance . . . can be directly linked to a claim of a denial of a specific constitutional right, if the reasons given for the continuance do not support any interference with the specific constitutional right, the court's analysis will revolve around whether the trial court abused its discretion. *State* v. *Bethea*, 167 Conn. 80, 85–87, 355 A.2d 6 (1974) (no abuse of discretion to deny continuance despite deprivation of sixth amendment claim when no showing that defendant attempted to find alibi witness, that witness would establish alibi defense or that witness available). In other words, the constitutional right alleged to have been violated must be shown, not merely alleged. See *Whyte* v. *Commissioner of Correction*, 53 Conn. App. 678, 682–83, 736 A.2d 145, cert. denied, 250 Conn. 920, 738 A.2d 663 (1999); see also *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991)." *In re Shaquanna M.*, 61 Conn. App. 592, 602–603, 767 A.2d 155 (2001).

[5] At oral argument before this court, defense counsel admitted that the length of the continuance sought was not exact and that the defendant may have needed a "two or three day" continuance.